**Clare E. WALDEN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–230C.**

United States Claims Court.

Feb. 20, 1991.

Kenneth M. Carpenter, Topeka, Kan., for plaintiff.

James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; Lt. Col. Mark A. Steinbeck and Major Raymond J. Jennings, Jr., Office of the Judge Advocate Gen., Dept. of the Army, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment.[1] The issue is whether a military review board, by awarding plaintiff 30–percent disability retirement, wrongfully denied plaintiff entitlement to full disability for Post-traumatic Stress Disorder from which he indisputably suffers.

## FACTS

The following facts derive from the administrative record. Clare E. Walden ("plaintiff") enlisted in the United States Army (the "Army") on January 26, 1968. His service terminated on March 17, 1971, with an Undesirable Discharge, which subsequently was upgraded to an Honorable Discharge by virtue of his decoration for valorous service in the Republic of Vietnam.

Plaintiff served honorably and meritoriously in Vietnam from September 9, 1968 through January 7, 1969, a period of approximately four months.[2] Upon arrival in Vietnam, plaintiff took part in heavy combat and consequently received two individual decorations, one of which was for valor.

On January 14, 1969, plaintiff received Article 15 punishment for an episode of being absent without leave ("AWOL") and for being drunk in command. On January 29, 1969, during a period of hospitalization for a lacerated hand, plaintiff was given a psychiatric consultation and was diagnosed with "chronic mild depression with suicidal ideas under combat conditions." Found "actively suicidal" when surrounded by death and killing, plaintiff was restricted from combat duty; however, the psychiatric department judged plaintiff to be medically fit to return to duty, as restricted.

Once stateside, plaintiff was repeatedly AWOL from his unit from March 1969 through March 1970, a total of 388 days. After two AWOL convictions, plaintiff was charged on December 10, 1970, with being AWOL for two additional lengthy absences in 1970, both of which spanned 60 days' duration. During his stateside service, plaintiff received treatment in August 1969 for a head injury. Within 30 days thereafter, plaintiff complained of disorientation, but upon separate examination "no residuals were shown." In November 1969 plaintiff was hospitalized for "[d]epressive reaction ... manifested by anxiety, depression, and suicide ideation." During his confinement in the stockade at Fort Riley, Kansas, for AWOL charges, plaintiff was noted to have "depressive reaction." Plaintiff's Army records reveal a pre-service history of psychiatric illness.

On January 15, 1971, plaintiff requested "discharge for the good of the service" in lieu of trial by court martial. Plaintiff's petition acknowledged that approval of his request might result in discharge under

---

1. The case was dismissed for plaintiff's failure to prosecute on November 16, 1990. Plaintiff moved to vacate the judgment of dismissal on November 26, 1990, and with, defendant's agreement, an order entered reinstating the case on November 27, 1990.

2. Records of the Veterans Administration reflect that plaintiff was evacuated after five and one-half months.

other than honorable conditions and receipt of an Undesirable Discharge Certificate.

After a separation physical examination on January 25, 1971, plaintiff was found fit for continued duty. When asked to state his present health in his own words, plaintiff stated, "I am in good health." However, the medical report indicates that plaintiff had experienced "depression or excessive worry," had suffered a head injury, and had attempted suicide. The Request for Discharge received approval on March 10, 1971, and the Undesirable Discharge issued the following week. On a form plaintiff signed captioned "Statement of Medical Condition," dated March 17, 1971, he checked the box next to the line reciting: "There has been no change in my medical condition." This notation referred to his January medical examination.

Implementing President Nixon's September 16, 1974 Presidential Proclamation 4313, President Ford on January 19, 1977, ordered the upgrade of discharge for veterans who received declarations for valor in Vietnam. On February 18, 1977, the Army Discharge Review Board determined that plaintiff was properly, "but not equitably," discharged and concluded that he should receive a discharge under Honorable Conditions.

In 1979 Plaintiff initially filed a claim with the Veterans Administration (the "VA") for disability benefits concerning injuries alleged to have occurred during his service pursuant to 38 U.S.C. § 331 (1982), which provides, in pertinent part:

> For disability resulting from personal injury suffered ... in the line of duty ... during other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury ... was incurred, ... compensation as provided in this subchapter....

The VA issued a decision on March 26, 1980, finding 30–percent disability, but denying the claim because the hand injury was not compensable; the head injury claim was denied because the injury was not identified during plaintiff's last physical examination in 1971. Plaintiff reopened his disability claim with the VA in 1980, seeking compensation for a skin condition allegedly due to exposure to Agent Orange. He later amended his claim to include an eye condition and a personality disorder, currently referred to as "Post-traumatic Stress Disorder" ("PTSD").

In late 1980 plaintiff was hospitalized for approximately two months with a psychiatric disorder diagnosed as schizophrenia. On February 3, 1981, on a VA Income Net Worth and Employment Statement (in support of his claim for total disability benefits), plaintiff stated that he was 100 percent disabled as of March 10, 1979, his last day of work. It is noteworthy that the date plaintiff alleges to be the date of total disability falls only one day before the automobile accident of March 11, 1979, in which plaintiff suffered a severe head injury and after which he complained of memory problems and irritability.

On July 30, 1981 the VA issued another rating decision denying plaintiff benefits for PTSD. The decision observed that plaintiff's records revealed no eye problems or skin condition during active duty and that plaintiff suffered before, during, and after his service from psychiatric disorders, including depression, suicidal tendencies, and schizophrenia.

Plaintiff filed a Notice of Disagreement, the first step in appealing the VA rating decision to the Board of Veterans Appeals, on August 24, 1981. Upon reconsideration of plaintiff's claim for disability benefits, the VA confirmed the July 1981 rating on September 3, 1981. In December 1981 the VA deferred its rating decision upon plaintiff's request for a complete review of his medical records. After considering plaintiff's clinical records in their entirety, the VA issued a third and final rating decision on January 8, 1982, denying plaintiff disability benefits for PTSD.

In two separate rating decisions (1981 and 1982), the VA denied service connection for plaintiff's personality disorder and delayed stress syndrome claims. The VA disallowed the personality disorder claim

because it pertained to a constitutional or developmental abnormality, for which benefits are not available, and because plaintiff failed to establish a service connection. The PTSD claim was denied because the medical findings attributed that claim to plaintiff's personality disorder—an inadequate personality. The VA regulations state that congenital or developmental defects or personality disorders, characterized by developmental defects, are not diseases or injuries within the meaning of the legislation applicable to service connection. 38 C.F.R. 3.303(c) (1990). Despite plaintiff's February 1981 diagnosis of "paranoid schizophrenic with depression," a later VA examination found no disabling psychosis present, but it did diagnose plaintiff with an "emotionally unstable personality." Due to the lack of an established service connection, the schizophrenia claim was denied, as well.

In accordance with proper procedures, the VA issued a Statement of the Case on September 8, 1981. Later that month, plaintiff filed a formal appeal to the Board of Veterans Appeals, seeking a rating of only 25–percent disability service-connected for delayed stress. The Board of Veterans Appeals established a service connection for plaintiff's PTSD on August 30, 1983. Upon remand and review of plaintiff's entire clinical records, the Board found plaintiff totally disabled since his initial claim for consideration of service connection for the psychiatric disorder in November 1980.

Plaintiff next filed an application in 1986 with the Army Board for Correction of Military Records (the "ABCMR") pursuant to 10 U.S.C.A. § 1552(a) (West Supp.1990), to correct his service records to reflect a "Medical Discharge," rather than the "Honorable Discharge" that he had received. Plaintiff did not specify on this application the degree to which he claimed disability upon discharge, nor did plaintiff request placement on the Temporary Disability Retirement List ("TDRL") pursuant to 10 U.S.C. § 1202 (1988). Plaintiff also failed to request a specific rating from the ABCMR. Under this correction of records procedure, a member of the armed forces, who is entitled to basic pay but who fails to

qualify for retirement because his disability has not been determined permanent, can be placed on the TDRL with retired pay if the Secretary of the appropriate military department determines that the disability may be permanent. After five years on the TDRL, the disability (if the same disability still exists) is considered permanent. 10 U.S.C. § 1210(b). Further, a determination of at least 30–percent disability under the VA disability rating standards, in addition to a permanent disability determination after five years, allows the service-member to be removed from the TDRL and retired. 10 U.S.C.A. § 1210(c) (West Supp. 1990).

Plaintiff presented the ABCMR with post-discharge evidence, including his job history profile (1971–1980), his earnings record, the Social Security award of total disability for PTSD, and his medical reports from 1980 to present. The Itemized Statement of Earnings indicates that plaintiff held 54 different jobs from 1968–1980. Despite employment income from 1971–1979, plaintiff received virtually no wages from 1980 to present. Although plaintiff contends that the Social Security Administration award him a 100–percent disability rating for PTSD in March 1981, the earliest date possible, plaintiff failed to include the basis for this assertion in the appendix to his brief.

The medical evidence submitted by plaintiff is the most direct evidence of PTSD. The VA records indicate plaintiff was hospitalized on no less than 10 separate occasions from 1980–1988. Although the length of the hospitalizations varies from a few days to two months, the reasons for plaintiff's admissions and the subsequent diagnosis are the same: depression, insomnia, and loss of appetite all stemming from PTSD, personality disorder, drug abuse, and chronic alcoholism. The clinical records submitted by plaintiff show his first VA psychiatric admission in 1980 in Wichita, Kansas. The only other hospital stay in Wichita occurred in 1979 after the automobile accident that rendered plaintiff unconscious for several days. The remainder of the medical records that plaintiff

submitted, although incomplete, show periods of hospitalization in the VA Hospital in Topeka, Kansas: one from May 1984 through February 1985, as well as seven stays during the course of 1988. The records also indicate that the May 1984 admission was plaintiff's second Topeka admission and his eighth VA psychiatric admission. Although the VA determined in 1985 that plaintiff was able to resume employment upon discharge, the 1988 reports note that he was discharged "irregular" after his first 1988 VA hospitalization. Medical records from the seven different 1988 hospitalizations diagnose plaintiff as suffering from PTSD, inadequate personality, and organic brain damage, possibly secondary to trauma from the 1979 automobile accident. Additional reports illustrate plaintiff's abuse of drugs and alcohol.

In its decision the ABCMR relied on advisory opinions from the Office of Army Surgeon General and from the Physical Evaluation Board ("PEB") of the Army Physical Disability Agency. The Surgeon General's advisory opinion indicated that plaintiff was "questionably medically qualified for retention at the time he was separated [from the service]" and that it remained unclear how much medical care he received for psychiatric symptoms during the years after his military service, since plaintiff was not eligible for VA care until approximately 1980.

The PEB's advisory opinion suggested 1) that despite the 1971 separation examination finding him fit for duty, plaintiff's records should be changed to reflect his placement on the TDRL for five years in lieu of discharge; 2) that plaintiff's condition would have been found to be unchanged from 1971 to 1976; and 3) that plaintiff's 30–percent disability based on PTSD would have been permanent in March 1976.

The Surgeon General's advisory opinion, in one page, briefly describes plaintiff's meritorious service in combat, AWOL episodes, hospitalization for depression and suicidal tendencies in 1969, and the qualifying separation examination in 1971. Although the advisory opinion states that the amount of plaintiff's psychiatric treatment from 1971–1980 is "unclear," it acknowledges his severe head injury from the automobile accident and his ensuing numerous hospitalizations for psychiatric treatment. Finally, the opinion mentions the Board of Veterans Appeals award of service-connected psychiatric disorder disability (later made 100 percent retroactive to November 18, 1980) and formally states that plaintiff was "questionably" medically qualified for service at the time of separation. The two-page PEB advisory opinion similarly describes in cursory fashion the significant dates and events of plaintiff's service. The "discussion" on page 1 of the opinion is comprised of six statements, only one of which discusses plaintiff's mental condition as the probable cause of his AWOL episodes.

Based on the advisory opinions, the ABCMR found that plaintiff was unfit at the time of his discharge from active duty and that plaintiff's administrative separation was improper. The ABCMR concluded that the Army's failure to properly evaluate plaintiff's physical condition upon separation from the service was in error and unjust. The ABCMR recommended that plaintiff's records be corrected to show: 1) that plaintiff was unfit for duty on March 17, 1971, when he was relieved from active duty for physical disability at a rating of 30 percent and, on the following day, that he was placed on the TDRL with entitlement to retired pay in the highest grade of PFC; and 2) that plaintiff's disabilities were permanent on March 17, 1976, and that he was retired permanently on March 18, 1976, and thus removed from the TDRL and permanently retired with grade pay of PFC. The ABCMR's recommendations were approved on May 17, 1989.

On July 21, 1989, plaintiff requested reconsideration of the ABCMR's decision asserting for the first time that he was totally disabled at the time of separation, contrary to the ABCMR's recommendation that plaintiff's disability rating be 30 percent. At this time plaintiff submitted additional evidence in support of his claim for 100–percent disability.

On October 6, 1989, the ABCMR denied plaintiff's request for reconsideration on the basis that the ABCMR previously had considered the original application and that the additional material submitted by plaintiff was not so substantial and material as reasonably to provide a basis for reversal of the ABCMR's original decision. Plaintiff filed suit in this court on March 15, 1990.

## DISCUSSION

■ The reviewing court cannot overturn a determination made by the military with respect to disability retirement absent a violation of a statute or regulation, *see Curry v. United States,* 221 Ct.Cl. 741, 746, 609 F.2d 980, 983 (1979), unless plaintiff shows " 'by cogent and clearly convincing evidence,' " that such a determination is arbitrary, capricious, or unsupported by substantial evidence. *Finn v. United States,* 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977) (quoting *Stephens v. United States,* 174 Ct.Cl. 365, 371–72, 358 F.2d 951, 954 (1966)). "Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm...." *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985). Additionally, the Federal Circuit in *Heisig v. United States,* 719 F.2d 1153 (Fed.Cir.1983), stated:

It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

719 F.2d at 1156 (footnotes omitted).

■ In military pay matters, the court reviews a plaintiff's case "through the prism of a correction board." *Cohn v. United States,* 15 Cl.Ct. 778, 789 (1988). The scope of judicial review is narrow: To overturn the board's decision, plaintiff must prove by cogent and clearly convincing evidence (1) a material legal error or injustice in the correction board proceeding and (2) an adequate nexus between the error or injustice and his separation from service without 100–percent disability compensation. *Hary v. United States,* 223 Ct.Cl. 10, 15, 618 F.2d 704, 706 (1980). Further, plaintiff must overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (citations omitted). Although the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of a disputed fact. *Heisig,* 719 F.2d at 1156.

Plaintiff argues that the ABCMR's conclusion, allowing only a 30–percent, rather than a total, 100–percent, disability rating for retirement benefits for PTSD is arbitrary and capricious. He asserts that the ABCMR not only lacked substantial evidence to support its decision, but that the ABCMR "ignored and misconstrued," Plf's Br. filed Jan. 3, 1991, at 4, substantial objective evidence, existing at the time of discharge and after discharge, indicating that he was disabled totally (100 percent) with PTSD at the time of separation. Plaintiff expresses concern that the ABCMR decision fails to mention the Social Security Award, earnings record, job history profile, or medical reports from 1980–present, evidence subsequent to discharge that plaintiff claims illustrates his mental impairment and supports a 100–percent disability rating.[3] Further, plaintiff charges that the ABCMR failed to articulate a basis for its decision. Plaintiff requests that this court, in order to effectuate an equitable result, grant him the benefit of a reasonable medical inference that his condition at discharge was the same as when plaintiff was diagnosed properly in 1980. Accord-

---

**3.** Plaintiff stated that he had "no pre-military psychiatric history," Plf's Br. filed Jan. 3, 1991, at 8, and denied having a family history of psychiatric illness during a January 1983 examination. Plaintiff's statements conflict with the record: The July 1981 VA rating decision noted that plaintiff's service records in September 1969 show "pre-service history of psychiatric illness."

ing to plaintiff, giving defendant the advantage of the absence of evidence, *i.e.*, diagnosis, medical records, or treatment, is not a good-faith exercise of discretion.

In plaintiff's view the only evidence to support the ABCMR's 30–percent rating is the separation examination performed in January 1971 that found plaintiff to be fit for duty. Plaintiff argues that the examination itself was so cursory and flawed in nature that it was incapable of detecting the "presence of, or the severity of" plaintiff's PTSD. Plf's Br. filed Jan. 3, 1991, at 9. He insists that the examination did not constitute a full, complete psychiatric evaluation for purposes of determining fitness, since the examination report fails to note psychiatric medication, treatment, suicide attempts, hospital stays, or symptomatology plaintiff suffered during his service. Plaintiff argues that it was improper for the Army to separate him without first referring him for a "formal mental status examination or properly review the medical report." Compl. filed Mar. 15, 1990, ¶ 29; *see id.* ¶¶ 24–26.

■ Defendant responds that the question of the completeness of plaintiff's discharge physical was not raised to the ABCMR. Defendant is correct. Because plaintiff failed to raise these allegations to the ABCMR, he is precluded from raising this question for the first time in court. *Doyle v. United States*, 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980) ("It has long been part of our law that a party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it.") (Citation omitted.)

Plaintiff reads *Walters v. United States*, 175 Ct.Cl. 215, 358 F.2d 957 (1966), to require that the court must look to medical history after separation "insofar as it sheds light on the nature of ... [a servicemember's] physical condition while in the service." 175 Ct.Cl. at 225, 358 F.2d at 962. *Walters* involved an action for disability retirement pay for a naval officer's back injuries, ultimately determined to be service-related. The Court of Claims noted that "[e]vidence of progressive deterioration and later discovered symptoms and disabilities may be decisive if it can establish that plaintiff's incapacity while in service was substantially more serious than suspected and that previous diagnoses were inadequate or incorrect." *Id.* at 225, 358 F.2d at 962–63 (citation omitted). The Court of Claims acknowledged that "[r]econstructing plaintiff's medical condition in light of subsequent development and deterioration necessarily involves a certain degree of conjecture...." *Id.* at 227, 358 F.2d at 963. However, the evidence before the correction board established not only the inadequacy of the servicemember's medical records, but also that he had a permanent, incurrable condition upon his release, "which would, if all the facts had then been known, have disqualified him for active duty." *Id.* at 227, 358 F.2d at 963–64 (footnote omitted). *Walters* goes on to explain that the lack of a definitive diagnosis (of a herniated disc) is explained by "the uncertain nature of the malady and the unreliable nature of the normal methods of medical discovery." *Id.* at 228, 358 F.2d at 964.

The significant difference between the case at bar and *Walters* is that the Court of Claims in *Walters*, deemed, after trial, that the conclusion was "inescapable" that plaintiff was suffering from a disabling herniated disc six years after he was released from active duty, that the board's conclusions to the converse were "contrary to the overwhelming weight of evidence," and that the condition related to injuries sustained in service. *Id.* at 222–24, 358 F.2d at 961. In the present case, the evidence of record before the ABCMR—prior to, during, and post-discharge—is conflicting.

■ Plaintiff also contends that the ABCMR erred by failing to give any consideration to the VA disability ratings when considering the question of the degree of plaintiff's disability. Although the VA's rating determination may be relevant evidence, it is not binding on this court nor conclusive on the issue of military disability retirement. *Finn*, 212 Ct.Cl. at 357, 548

F.2d at 342. Moreover, VA disability ratings are assigned under different statutory authority, *i.e.*, criteria other than the military's fitness decisions; the VA does not make fitness-for-duty determinations. *Hinkle v. United States,* 229 Ct.Cl. 801, 804–05 (1982).

Plaintiff relies on *Beckham v. United States,* 183 Ct.Cl. 628, 392 F.2d 619 (1968); *Dayley v. United States,* 180 Ct.Cl. 1136 (1967) (per curiam); and *Smith v. United States,* 168 Ct.Cl. 545 (1964) (per curiam). *Beckham* was also the product of a trial. The Court of Claims remarked that the review boards failed to articulate any standards by which determining fitness or unfitness were to be made and that the correction board decision on review made no finding that the servicemember's disability was not service-related. Moreover, the court faulted the correction board for not analyzing the evidence. "A naked conclusion and mere recitation that the opinion is based on all of the evidence without an analysis of the evidence in writing ... is inadequate." 183 Ct.Cl. at 636, 392 F.2d at 622–23. Concerning a VA rating determination, the court stated: "The Veterans Administration has also found that plaintiff's disease was service-incurred. Its conclusion, when based on a medical examination as here, is entitled great weight." *Id.* at 634–35, 392 F.2d at 622 (citation omitted).

In *Dayley* the Court of Claims ruled that the servicemember's disability (of a psychiatric nature) was aggravated by his last tour of duty. The *Dayley* court adopted the post-trial report of a Trial Commissioner. The opinion observed: "While not binding on the Army in a disability retirement proceeding, the action of the Veterans Administration is entitled to some consideration and weight in determining whether a discharged officer is 30 percent or more disabled...." 180 Ct.Cl. at 1143. Troublesome to defendant's position is that the opinion exhaustively analyzes the contradictory evidence of record, faulting the correction board for producing a decision omitting "any meaningful discussion of the complicated and contradictory service and medical records which would reconcile the inconsistencies ... so that the applicant would be able to determine the validity of the reasons for the rejection of his application." 180 Ct.Cl. at 1145.

In *Smith* the Court of Claims found "total absence of known causative factors other than wartime medical history, compel[ing] the conclusion that plaintiff was disabled when he was released from active service...." 168 Ct.Cl. at 554. As is plaintiff in the case at bar, the servicemember in *Smith* was found normal or fit for duty upon separation examination. *Smith* was also the product of a trial. The court noted that although the correction board and Surgeon General had before them all the records of the VA concerning the servicemember's medical problems,

> it cannot be determined what weight as given to the evidence because the reports are conclusionary in nature and do not discuss the details or specify previously what items of evidence were considered. All we know is that the Surgeon General advised that the evidence did not support the claim, that there was no clear evidence of hypertensive heart disease in 1946, and that the cause of that disease was not known to be the consequence of deceased's wartime experience.

168 Ct.Cl. at 552. This language aptly describes both the Surgeon General's and PEB's advisory opinions in the case at bar.

The concept of substantial evidence embraces a canvass of the whole record: "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight...." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951) (quoted in *SSIH Equip. S.A. v. USITC,* 718 F.2d 365, 382 (Fed.Cir.1983)); *accord Spurlock v. DOJ,* 894 F.2d 1328, 1332 (Fed.Cir.1990).

■ Taken together *Beckham, Dayley,* and *Smith* illuminate varying roles of VA determinations in older Court of Claims cases preceding *Finn.* More cogently, these cases support plaintiff's contention that the ABCMR's decision was deficient in that the advisory opinions upon which the ABCMR expressly relied did not provide a

balanced analysis of the medical evidence. *See Istivan v. United States*, 231 Ct.Cl. 671, 676, 689 F.2d 1034, 1038 (1982) (citing *Beckham* on point); *Versaci v. United States*, 185 Ct.Cl. 672, 691, 403 F.2d 246, 256 (1968) ("Such a determination, 'conclusionary in nature,' making it impossible to 'determine what weight was given to the evidence,' . . . cannot be sustained.") (Citations omitted.) That the ABCMR's decision itself summarized the chronology of plaintiff's efforts before the VA and the findings of the VA is insufficient. Defendant cannot supply the reasoning that the ABCMR or the advisory opinions might have employed had they considered the conflicting medical evidence.

The ABCMR referred to plaintiff's military and VA records both prior and subsequent to his discharge from the service. Further, the ABCMR acknowledged its reliance on the advisory opinions of the Surgeon General and the PEB. Finally, the ABCMR based its decision on enumerated findings. The decision of the ABCMR, faithful as to form, nonetheless lacks the substance commanded by the Court of Claims in these decisions. In these circumstances a remand is warranted. During argument defense counsel stated that he had no objection to such a course of action.

Finally, plaintiff asks for the benefit of a reasonable medical inference that his condition upon discharge was the same as when he was first properly diagnosed in 1980, in order to provide an equitable result. Defendant responds that there is no evidence to support the hypothesis that the Army would have determined plaintiff to be 100 percent disabled if he had been properly diagnosed in 1971 and if the diagnosis of PTSD had existed in 1971. According to defendant, the 1985 VA determination of plaintiff's total disability due to PTSD as of 1980 does not reflect or cast any light upon plaintiff's condition at the time of the 1971 discharge or upon his condition at the time of his removal from the TDRL and placement upon the permanent disability list in 1976. These are questions commended to the attention of the ABCMR on remand.

## CONCLUSION

Plaintiff has shown by cogent and clearly convincing evidence that the decision of the ABCMR failed to reflect a balancing of the conflicting evidence concerning his medical condition prior to, during, and post-discharge and to identify the criteria used as a basis for its decision. The military must put its own mind to the task in a close case and must explain the reasoning underlying its conclusion. Accordingly, based on the foregoing,

IT IS ORDERED, as follows:

1. Pursuant to RUSCC 60.1(a)(1), this case is remanded to the Army Board for the Correction of Military Records (the "ABCMR").

2. The ABCMR will thoroughly review the available evidence to determine the extent of plaintiff's disability at the date of discharge and 5 years from that date. Specifically, the ABCMR's decision shall analyze the medical evidence of record, especially the conflicting evidence, prior to, during, and post-discharge, and shall indicate what criteria were used in determining the extent of plaintiff's disability as of 1971 and 1976. In furtherance of this mandate, the ABCMR shall conduct such further proceedings if and as the ABCMR deems proper.

3. The parties' cross-motions for summary judgment are denied without prejudice to renewal if the case is not disposed of before the ABCMR.

4. Proceedings in this court are stayed until August 1, 1991, by which time the ABCMR shall issue and transmit its decision to the Clerk of the Court pursuant to RUSCC 60.1(b)(3).

5. Any notice pursuant to RUSCC 60.1(b)(4) shall be filed by August 30, 1991, and further proceedings will be scheduled promptly.