John W. **FRECHT**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 91–1028C.

United States Claims Court.

Jan. 21, 1992.

---

Guy J. Ferrante, Falls Church, Va., for plaintiff.

Catherine A. Christman, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment. The issue for decision is whether a correction board erred in issuing a general discharge to plaintiff for allegedly committing homosexual acts.

## FACTS

The following facts are undisputed, unless otherwise noted. John W. Frecht ("plaintiff") enlisted in the United States Army (the "Army") on December 20, 1968, as a second lieutenant. At the time of this enlistment, he was 20 years old with 10 months and 15 days of prior active enlisted service.

By 1985 plaintiff had obtained the rank of major and had been selected for a promotion to lieutenant colonel. At the start of 1985, plaintiff was serving as Chief of Operations and Plans Division, U.S. Army Field Artillery Board, Fort Sill, Oklahoma.

On January 4, 1985, plaintiff separately apprised Captain (Cpt.) Thomas A. McWhorter and Colonel (Col.) Charles S. Nobles that he had received a call from an unknown woman asking for $5,000.00 in exchange for a tape recording of a homosexual incident that occurred between plaintiff and an unnamed male two to three months earlier. Plaintiff explained to Cpt. McWhorter and Col. Nobles that he had been picked up by a male who performed oral sodomy on him and that plaintiff, in return, masturbated the male.

On January 7, 1985, Col. Nobles related this information to the Criminal Investigation Division (the "CID"). A CID agent contacted plaintiff the following day, at which time plaintiff informed the agent that plaintiff had obtained legal counsel. Plaintiff declined to be questioned by the agent and was unwilling to provide additional information regarding the alleged blackmail attempt. The investigation by the CID was terminated because of the lack of investigative leads.

On January 9, 1985, plaintiff was temporarily removed from his position as Chief of Operations and Plans Division and was assigned as a Special Assistant to the Deputy President/Executive Officer. In addition to taking this action against plaintiff, the Army suspended plaintiff's access to classified documents and initiated a suspension of favorable personnel actions for plaintiff.

On January 14, 1985, plaintiff reported to Major Paul R. Epp, M.D., M.C. (psychiatrist), for a mental health examination pursuant to AR 635–100 (Aug. 1, 1982). On January 31, 1985, Major Epp and Cpt. Bruce V. Corsino, PSY.D., MSC (Chief, Psychology Service) completed a report on plaintiff's mental health. The report revealed the following information:

1.) Plaintiff was diagnosed as suffering from major depression, a single episode manifested by dysphoric mood, decreased energy, feelings of worthlessness, and indecisiveness.

2.) The evaluation of plaintiff showed no evidence of homosexual orientation.

3.) The evaluation of plaintiff indicated the presence of a major depression occurring prior to, during, and after the incident.

4.) The homosexual incident happened as a result of impaired judgment that resulted from the major depression.

5.) Individual and marital treatment were strongly recommended.

6.) In addition, it was recommended that plaintiff's condition be dealt with through medical treatment; but it was noted that if plaintiff's condition did not improve, a medical retirement would be in order.

On February 4, 1985, Col. Nobles notified plaintiff that due to his participation in two homosexual acts (the unnamed male's act upon plaintiff and plaintiff's act upon the male) a recommendation to eliminate plaintiff from the Army had been initiated pursuant to AR 635–100 ¶ 5–12a.(7).[1] Plaintiff elected not to respond to the action.

On February 5, 1985, plaintiff was admitted to Sheppard Air Force Base Hospital for treatment for depression. On March 1, 1985, plaintiff was discharged from the mental health facility of the hospital. The results of plaintiff's care are outlined below:

1. Plaintiff was diagnosed as having atypical depression (recovered), marital problem (resolved) and type IIB hyperlipidemia. The atypical depression was manifested by depression, crying spells, decreased appetite, decreased libido, feelings of worthlessness, and suicidal ideas.

2. The atypical depression was not so severe that plaintiff's ability to function in the military environment would be significantly impaired.

3. It was noted that there was no evidence of homosexual tendencies, but it was recommended that security clearance be suspended until completion of the investigation and evaluation of allegations.

On March 27, 1985, Major Epp completed a follow-up mental health evaluation report on plaintiff. The report contained the following information:

1. Treatment of plaintiff's condition was continuing on an outpatient basis.

2. The hospital's evaluation of plaintiff was consistent with plaintiff's pre-hospital diagnosis of depression. Plaintiff was being treated with antidepressant and antianxiety medication, as well as outpatient psychiatric care.

3. The duration of treatment could not be accurately predicted, but would likely continue for at least six months to one year.

4. Plaintiff's response to treatment had been satisfactory. Thus, he did not manifest a significant impairment for military service and medical retirement was not necessary.

5. While plaintiff's depression resulted in impaired judgment, it did not diminish his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Thus, plaintiff qualified for administrative action deemed appropriate by his command.

---

1. AR 635–100 ¶ 5–12a.(7), provides as follows:
   **5–12. Misconduct, moral or professional dereliction or in interests of national security.**
   a. While not all inclusive, existence of one of the following or similar conditions, unless successful[ly] rebutted, authorizes elimination of an officer due to misconduct, moral or professional dereliction or in the interests of national security:
   . . . .
   (7) Homosexuality (see sec XIV [Separation for Homosexuality] ).

The evaluation opined that the depression that plaintiff was experiencing at the time of the homosexual incident contributed to his participation in the incident. Depression, however, is not a condition that Army regulations recognize as excusing such misconduct.

On April 24, 1985, Col. Nobles recommended that plaintiff be eliminated. On May 10, 1985, Brigadier General Raphael J. Hallada, Acting Commander at Fort Sill, notified plaintiff that he was recommended for elimination and outlined for plaintiff the options available to him. On May 17, 1985, Major General John S. Crosby, Commanding Officer at Fort Sill, recommended to Army Headquarters in Alexandria, Virginia, that plaintiff be eliminated. On June 28, 1985, Col. Thomas P. Barrett, Chief of the Combat Arms Division, U.S. Army Military Personnel Center, Alexandria, Virginia, recommended to the President of the Elimination Selection Board that plaintiff be eliminated from the Army because of the homosexual incident and that plaintiff be required to show cause why he should be retained in the Army. The Elimination Selection Board convened under the authority of AR 635–100 on July 25, 1985, issued a report dated August 15, 1985, determining that plaintiff be required to show cause for his retention in the Army. On August 30, 1985, in response to this determination, plaintiff elected to appear before a Board of Inquiry ("BOI") to show cause for his retention in the Army.

Plaintiff appeared before a BOI on November 8, 1985. When the basis for discharge is a homosexual act, the BOI must recommend separation absent specific findings that a serviceman qualifies under so-called "retention criteria." The burden of proving homosexual acts is the Army's; the burden of meeting the criteria for retention is the officer's.[2] AR 635–100 ¶ 5–49, provides:

**5–49. Criteria.** The basis for separation may include preservice, prior service, or current service conduct or statements. A member shall be separated under the provisions of this section if one or more of the following approved findings is made:

a. The member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are approved further findings that:

(1) Such conduct is a departure from the member's usual and customary behavior;

(2) Such conduct under all circumstances is unlikely to recur because it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service;

(3) Such conduct was not accomplished by use of force, coercion, or intimidation by the member during a period of military service;

(4) Under the particular circumstances of the case, the member's continued presence in the service as an officer of the Army is consistent with the interest of the Army in proper discipline, good order, and morale; and

(5) The member does not desire to engage in or intend to engage in homosexual acts.

b. The member has stated that he/she is a homosexual or bisexual unless there is a further finding that the member is not a homosexual or bisexual.

c. The member has married or attempted to marry a person known to be of the same biological sex (as evidenced by the external anatomy of the persons involved) unless there are further findings that the member is not a homosexual or bisexual (e.g., where the purpose of the marriage or attempt to marry was the avoidance or termination of military service).

The BOI convened, in closed session after the presentation of evidence, to determine if plaintiff had met his burden of

---

**2.** AR 635–100 ¶ 5–54c. provides, in full:

    c. The burden of proving that retention is required under the limited circumstances described in paragraph 5–49 rests with the member except in cases where the member's conduct was solely the result of a desire to avoid or terminate military service.

proving the retention criteria established by AR 635–100 ¶ 5–49. After deliberating for a period of time, the BOI requested the assistance of a legal advisor, pursuant to AR 635–100 ¶ 5–43b., to review the legal sufficiency and technical correctness of the BOI's findings and recommendations.[3] The BOI discussed with the legal advisor the problem the BOI had finding criterion No. 2 ("Such conduct under all circumstances is unlikely to recur because it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service"). The BOI believed that homosexual conduct was not likely to recur for reasons other than those listed in this criterion. The exchange between the BOI and the legal advisor on this matter was as follows:

> PRES: We had specific difficulty with the reference—the pronoun "such" or the describer "such" because this particular act taken in the context of the facts and circumstances that led to the act, if we talk about such conduct that produced this terminal effect, we could not agree whether we're talking about the terminal effect or the atmosphere that produced that. We believe that his conduct pattern is such, and vulnerability is such, that this or a similar act, because it was—brought out that this was—the symptoms were treated, not the cause. So there is no credible evidence that the cause that would have produced this terminal effect has ever been treated, and we could not come to a consensus and so that basically the gut issue was we could not come to whether "such" was to be loosely interpreted or strictly interpreted. If "such" means homosexual, then we believe that the homosexual act would not recur, but such conduct that would produce either this or another vulnerability, other things could recur.

COL KEAVENEY: See, the issue there is not that we're concerned about further homosexuality as we are about his reliability and inability to cope with stress—
PRES: Basically we took that whole thing assumed in here and said we have not had any credible evidence that would preclude the behavior pattern that's produced this. So it's not in the best interests of the Army. And we just—
LA [Legal Advisor]: What you'd be saying then, sir, is that such conduct is likely to recur although it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service?
PRES: No. Such conduct.
COL. HARRIS: The word "such."

. . . .

LA: Okay, you're saying that such conduct under all circumstances was not likely to recur. Is that what the board agreed on? The conduct being the homosexual acts.
PRES: Yeah. Period.

. . . .

PRES: ... [T]he best interests of the government from our perspective is the chain of command came on board and said he's a great guy, but the real issue was the troops. If we line up all the troops and said—and took a vote, we don't believe that's in the best interests of the Army if the word gets out. And that's the governing concern, for the welfare of the troops, from our perspective.

. . . .

LA: ... But let's be sure that I understand. Maybe I didn't understand what you've done here.

. . . .

LA: So as to number 2, the regulation says that such conduct, under all circumstances, is not likely to recur because it was solely the result of immaturity, in-

---

**3.** AR 635–100 ¶ 5–43b. provides, as follows:
  b. Advice of the legal adviser may be sought whenever necessary, but the board will be opened and the advice will be obtained in open session in the presence of the recorder, respondent, and his counsel. Such proceedings will be made a part of the record. However, after the board has determined its find-

ings and recommendations, the board may request the presence of the legal adviser and the reporter in its closed session for the purpose of assisting the board in putting its findings and recommendations in acceptable format, and such proceedings will be transcribed verbatim and made a part of the record.

toxication, coercion, or a desire to avoid military service.

Now, has the board determined that it is or is not likely to recur?

PRES: Homosexuality?

LA: Yes, sir.

PRES: Not likely.

LA: Not likely. So you determined that the conduct is not likely to recur. But the second half of the sentence, because it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service, you do not agree?

PRES: That's correct.

LA: So what you'd be saying then "such conduct under all circumstances is not likely to recur although it was not solely the result of immaturity, intoxication, coercion, or a desire to avoid military service.

PRES: I'll buy that.

LA: Instead of "because" you want "although."

PRES: Although it was not directly— those four factors, it's not likely to recur for other reasons than the four choices we're given.

After the BOI concluded its discussions with the legal advisor, the BOI announced its findings and recommendations to plaintiff. The BOI found that 1) plaintiff had engaged in homosexual acts;[4] 2) such conduct was a departure from plaintiff's normal and customary behavior; 3) such conduct would not likely recur, although such conduct was not solely the result of immaturity, intoxication, coercion, or a desire to avoid military service; 4) such conduct was not accomplished by use of force, coercion, or intimidation by plaintiff during a period of military service; 5) under the particular circumstances of the case, plaintiff's continued presence in the service as an officer of the Army would not be consistent with

the interest of the Army in proper discipline, good order, and morale and; 6) plaintiff did not desire to engage in or intend to engage in homosexual acts in the future. The BOI recommended that plaintiff be discharged from the Army and issued a general discharge under honorable conditions.[5]

On February 20, 1986, a Board of Review for Eliminations reviewed the action of the BOI and sustained the BOI's recommendations. On March 25, 1986, plaintiff was discharged from the Army under honorable conditions and he was issued a certificate of general discharge by reason of misconduct, moral or professional dereliction.

On January 4, 1988, plaintiff applied to the Army Board for Correction of Military Records (the "ABCMR") seeking, inter alia, retroactive reinstatement to active duty. Plaintiff's arguments for reinstatement included the following: 1) The Army shifted the burden of proof to him and thereby violated his due process rights; 2) The discharge decision was not based upon a "fair and impartial" consideration of the facts, and; 3) The discharge was generally inappropriate.

The Office of the Judge Advocate General (the "JAG") issued an advisory opinion on May 23, 1990, addressing the issues raised by plaintiff in his application to the ABCMR. The JAG determined that there was no legal requirement to grant the relief requested by plaintiff. However, the JAG noted that the ABCMR, in its own discretion, could determine whether plaintiff's general discharge effected an injustice that warranted the granting of full or partial relief. The following distills the JAG's reasoning:

1) The fact that plaintiff engaged in the acts of oral sodomy with and masturbation of another male is circumstantial evidence

---

**4.** AR 635–100 ¶ 5–48c. defines a "homosexual act" as follows:

    c. A homosexual act means bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires.

**5.** AR 635–100 ¶ 5–50 provides that an officer who engages in a homosexual act may receive a

discharge under other than honorable conditions when certain listed circumstances accompany the homosexual act. Where the listed circumstances do not exist, as in the present case, the regulation provides that "the type of discharge will reflect the character of the member's service, in accordance with chapter 1."

that the BOI could have considered to determine, by a preponderance of the evidence, that such acts were done with the intent to satisfy plaintiff's and the other male's sexual desires. Although the BOI could have concluded that plaintiff did not engage in the conduct to satisfy his sexual desires, the evidence did not command such a conclusion.

2) The legal advisor properly advised the BOI that the Army had to prove that a homosexual act occurred by a preponderance of the evidence and that plaintiff had to be retained if the BOI found that the retention criteria were met. Additionally, the limited discussion that the legal advisor had with the BOI members failed to provide specific evidence that the BOI used an inappropriate standard of proof.

3) The recorder's comments were fair comments on the evidence and were not substantially prejudicial to any important right of plaintiff.

4) AR 635–100 ¶ 5–43b. provides that a legal advisor may assist the BOI in completing its findings' worksheet. The legal advisor's assistance was necessary in the BOI's proceedings.

5) With respect to criterion No. 2 ("Such conduct under all circumstances is unlikely to recur because it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service"), the BOI determined that the homosexual acts were not likely to recur; however, it did not determine that such conduct was not likely to recur because it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service. These are conjunctive requirements that must be satisfied if a servicemember is to be retained. Because the BOI did not find for plaintiff in the second portion of criterion No. 2, its failure to determine the finding in plaintiff's favor was not legally objectionable.

6) With respect to criterion No. 4, the BOI did not determine that, under the circumstances of plaintiff's case, plaintiff's continued presence in the service as an officer of the Army would be consistent with the interest of the Army in proper discipline, good order, and morale.[6]

On October 3, 1990, the ABCMR concluded:

1. The elimination process was conducted in accordance with applicable law and regulations.

2. There was not sufficient evidence to establish an injustice in connection with the applicant's general discharge.

3. The ABCMR thoroughly considered and weighed against the serious nature of plaintiff's misconduct plaintiff's length and character of service. The ABCMR found no basis to grant relief.

4. Plaintiff failed to submit sufficient evidence to establish probable material error or injustice.

## DISCUSSION

In military pay matters, the court reviews a plaintiff's case "through the prism of a correction board." *Cohn v. United States*, 15 Cl.Ct. 778, 789 (1988). The scope of judicial review is narrow: To overturn the board's decision, plaintiff must prove by cogent and clearly convincing evidence (1) a material legal error or injustice in the correction board proceeding and (2) an adequate nexus or link between the error or injustice and the adverse action. *Hary v. United States*, 223 Ct.Cl. 10, 15, 618 F.2d 704, 706 (1980). Further, plaintiff must overcome the presumption

---

6. AR 635–100 ¶ 5–47a. states:

> **5–47. Policy.** a. Homosexuality is incompatible with military service. The presence in the military environment of persons who engage in homosexual conduct or who, by their statements, demonstrate a propensity to engage in homosexual conduct, seriously impairs the accomplishment of the military mission. The presence of such members adversely affects the ability of the armed forces to maintain discipline, good order, and morale; to foster mutual trust and confidence among members; to insure the integrity of the system of rank and command; to facilitate assignment and worldwide deployment of members who frequently must live and work under close conditions affording minimal privacy; to recruit and retain members of the Armed Forces; to maintain the public acceptability of military service; and to prevent breaches of security.

that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (citations omitted). Although the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of the disputed matter. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983).

The BOI must follow Army regulations. It must also review the evidence and give clear reasons why it arrived at its decision. Once it has done this, and when regulations give it broad discretionary power, the courts may not second guess the military in its characterization of who is fit for military service. That function is reserved for the military and not the judiciary. Even if the court might disagree with the correction board's decision refusing to disturb the BOI's discharge, it cannot substitute its own judgment for the board's if reasonable minds could reach differing resolutions of a disputed fact. "[J]udges are not given the task of running the [military].... The military constitutes a specialized community governed by a separate discipline from that of the civilian...." *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). The judiciary has to be "scrupulous not to interfere with legitimate [military] matters...." 345 U.S. at 94, 73 S.Ct. at 540. In reviewing the action of the BOI, the ABCMR concluded that plaintiff's separation proceedings were conducted in compliance with applicable law and regulations. In addition, the ABCMR determined that plaintiff failed to submit sufficient evidence to warrant the ABCMR's finding either material error by the BOI or injustice to plaintiff. The ABCMR thus denied relief to plaintiff. Plaintiff challenges the ABCMR's determinations, as well as the BOI's.

■ Plaintiff contends that when the BOI consulted with a legal advisor, without the presence of plaintiff and his counsel, the Army violated AR 635–100 ¶ 5–43b. This regulation requires that if the BOI avails itself of the advice of a legal advisor, it must do so in the presence of the recorder, the respondent, and his counsel, unless the BOI has already determined its findings and the sole purpose of the legal advisor's participation is to assist in the BOI's formatting of the findings and recommendations. Thus, it is necessary to determine if, prior to the BOI's exchange with the legal advisor, the BOI had made its findings; and if so, whether the sole purpose of the exchange was to obtain the assistance of the legal advisor in formatting the BOI's findings and recommendations.

The findings discussed with the legal advisor were those related to AR 635–100 ¶ 49. This regulation requires that plaintiff be retained in the Army even if he engaged in a homosexual act if plaintiff proves the following:

(1) Such conduct is a departure from the member's usual and customary behavior;

(2) Such conduct under all circumstances is unlikely to recur because it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service;

(3) Such conduct was not accomplished by use of force, coercion, or intimidation by the member during a period of military service;

(4) Under the particular circumstances of the case, the member's continued presence in the service as an officer of the Army is consistent with the interest of the Army in proper discipline, good order, and morale; and

(5) The member does not desire to engage in or intend to engage in homosexual acts.

The record of the exchange between the legal advisor and the BOI indicates that the BOI made the necessary findings before consulting with the legal advisor and that the sole purpose of the legal advisor's participation was to refine the BOI's findings to an acceptable form.

The president's first statement to the legal advisor was the following: "We would ask that the findings and recommendations be reviewed for legal sufficiency

prior to us signing them to make sure that we are technically correct." The legal advisor then instructed the BOI: "You have to make specific findings as you've outlined on here. You have to read those in open session...." These comments establish that findings were made by the BOI prior to its meeting with the legal advisor. Following this initial exchange between the president and the legal advisor, the legal advisor asked the BOI specifically about each finding.

With respect to Finding 1, the legal advisor stated, "[S]o this is your first finding here." The president of the BOI responded, "Yes." A reference was then made to "usual and customary behavior," indicting definitively that Finding 1 was being discussed.

In the discussion of Finding 2, the legal advisor asked, "Okay, you're saying that such conduct under all circumstances was not likely to recur. Is that what the board agreed on? The conduct being the homosexual acts." The president responded, "Yeah. Period." Further discussion then took place with respect to why the homosexual acts were not likely to recur. The dialogue with respect to Finding 2 concluded with the legal advisor's stating, "Instead of 'because' you want 'although,'" with the president responding, "Although it was not directly—those four factors, it's not likely to recur for other reasons than the four choices we're given." Plaintiff contends that the BOI did not vote and agree on this finding until the legal advisor was present. The court does not agree. The question the BOI presented to the legal advisor was how to phrase the BOI's determination that the homosexual acts were not likely to recur because of reasons other than those listed in Finding 2 of the regulation. The legal advisor's assistance on this matter did not violate Army regulations.

Defendant maintains that the BOI found plaintiff failed to meet the second retention criterion because the requirements are conjunctive. The court interprets the finding as nugatory because the BOI did not make the required finding in *haec verba*. Plain-tiff, however, suffered no prejudicial violation of his rights when the BOI altered the finding to the effect that the unlikelihood of recurrence was due to factors other than immaturity, intoxication, coercion, or a desire to avoid military service. The BOI was attempting to help plaintiff by substantiating its finding that homosexuality was not likely to recur. *See infra* note 7.

With respect to Finding 3, the legal advisor asked, "As to 3, have you voted on 3?" The president responded, "Yes." That "3" is Finding 3 is apparent by the ensuing dialogue. The legal advisor stated, "[S]uch conduct was not accomplished...." The president responded, "Was not." With respect to Finding 4, the legal advisor asked, "As to 4, have you discussed and voted on that?" The president responded, "I'll say yes, sustain that." It is clear that "4" is Finding 4, because after the previous comment the legal advisor asked whether the BOI's finding was that plaintiff's continued presence in the Army was not consistent with the interest of the Army, to which the president responded, "That's correct." With respect to Finding 5 the legal advisor asked, "As to number 5, have you discussed and voted on that one?" The president answered, "Does not." The legal advisor then responded, "[Plaintiff] does not desire [to engage in homosexual acts]. In view of the findings that you've made, you recommend [plaintiff] be discharged from the Army and be issued a general discharge under honorable conditions. That's what you discussed an[d] voted on?" The president responded, "That's correct." This last dialogue clearly indicates that Finding 5 and the recommendation to discharge plaintiff were voted on by the BOI prior to its meeting with the legal advisor.

There was nothing improper about the BOI's exchange with the legal advisor. The record reflects that the BOI made the necessary findings before consulting with the advisor. The sole purpose of the legal advisor's participation was to refine the BOI's findings and reduce them to an acceptable form. There is no evidence to suggest that the legal advisor's participation was contrary to Army regulations.

The court finds that there was no error in the BOI's or the ABCMR's determinations in respect of retention criterion 1–3 and 5.

■ Plaintiff challenges the determination that his retention would be inconsistent with the interest of the Army in proper discipline, good order, and morale. Plaintiff maintains that his excellent service record, with only one isolated incident of misconduct, does not support such determination. In *Sargisson v. United States*, 913 F.2d 918 (Fed.Cir.1990), the officer argued that the decision to release him was erroneous because his record of performance, that was submitted to a Reserve Officer Screening Board (the "ROSB"), contained an unfavorable Officer Effectiveness Report ("OER") that subsequently was voided by a correction board. His release was due to a requirement for a reduction in manpower. In accordance with Air Force regulations, the Secretary had issued a letter of instruction for elimination of reserve officers. The instructions required the ROSB to review performance records and align them in relative order of merit using the best qualified method of selection. The correction board concluded that the removal of the one OER from the officer's record would not have made a difference in his retention.

On review the appeals court held that "[t]here is no way a court can review that conclusion. A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit...." *Id.* at 922. The court determined that, although "once the Secretary promulgated regulations and instructions and made them the basis for [the officer's] release, his action became subject to judicial review for compliance with those regulations and instructions...." *Id.* at 921, certain matters are nonjusticiable. "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence....'" *Id.* at 922 (quoting *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355

(1988) (citations omitted)). "'In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded....'" *Sargisson*, 913 F.2d at 921 (quoting *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962)).

In the present case, no standards or tests exist by which the court can judge whether plaintiff's retention would be inconsistent with the interest of the Army in proper discipline, good order, and morale. Thus, this issue is nonjusticiable. Consequently, plaintiff's argument that the decision to discharge him was arbitrary, capricious, or unsupported by the evidence, in light of his service record that included only one isolated incidence of misconduct, is of no avail.

Alternatively, reasonable minds could reach different conclusions as to the impact of the incident on proper discipline, good order, and morale. The circumstances of the incident have been described; blackmail had proved itself to be a reality. *Heisig*, 719 F.2d at 1156.

■ Plaintiff charges that his due process rights were violated when the Army shifted the burden to him to show cause for retention. Plaintiff relies on *Carter v. United States*, 206 Ct.Cl. 61, 509 F.2d 1150 (1975), *cert. denied*, 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976). In *Carter* the Court of Claims held that "The legislature cannot declare an individual guilty or presumptively guilty of a crime, or place on him the burden of going forward with the evidence...." 206 Ct.Cl. at 69, 509 F.2d at 1154. The court stated that its decision did "not raise any question concerning the use of the 'show cause' procedure in any case ... where there is not exposure to a stigma-type discharge ... [or where there is exposure to discharge with stigma], if guilt is proved in an administrative procedure that recognizes and observes the usual due process safeguards for the accused." *Id.* Thus, the

only question *Carter* raised, apropos of the case at bar, is whether plaintiff could receive a discharge under other than honorable conditions without proof that he committed a wrong. AR 635–100 ¶ 5–49 provides that a servicemember may be discharged from the Army when there is a finding that the servicemember engaged in a homosexual act. Thus any type of discharge, honorable or less than honorable, requires a finding that a homosexual act occurred. With respect to proceedings before the BOI, AR 635–100 ¶ 5–32 provides:

> It is the responsibility of the Government to establish by a preponderance of evidence that the officer has failed to maintain the standard desired for his grade and branch or that he has conducted himself in a manner prejudicial to national security. In the absence of such a showing by the Government, the board must find for retention. . . .

Thus, the Army simply could not declare that plaintiff committed a homosexual act or require plaintiff to prove that he did not commit such an act. The Army had to prove that plaintiff committed a homosexual act. The requirement of AR 635–100 ¶ 5–54c. that plaintiff prove cause for retention took effect only after a finding was made that plaintiff committed a homosexual act. AR 635–100 ¶ 5–54c. does not conflict with *Carter* or plaintiff's right to due process. It was not unconstitutional to require plaintiff to prove that he should be retained after it was found by a preponderance of the evidence that plaintiff had committed a homosexual act.[7]

### CONCLUSION

Accordingly, based on the foregoing, defendant's cross-motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.

No costs.

---

7. The court does not consider plaintiff's argument that AR 635–100 ¶ 5–49a.(2) violated DOD Directive 1332.30. Plaintiff admitted, in its responsive brief to defendant's cross-motion for summary judgment, that this contention was not raised before the ABCMR. Failure of plaintiff to raise an issue before the ABCMR precludes plaintiff from raising the issue before this court. *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000, *modified,* 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Walden v. United States,* 22 Cl.Ct. 532, 538 (1991). The court notes that this issue would not be dispositive because the BOI found that plaintiff did not satisfy AR 635–100 ¶ 5–49a.(4).

The court also does not consider plaintiff's argument that due to Col. Keaveney's participation in the BOI proceedings he was robbed of an impartial and fair hearing. His challenge concerning Col. Keaveney was not raised or argued before the BOI. Failure to timely raise objections and issues to a board of inquiry constitutes a waiver of that right in subsequent litigation. *Snakenberg v. United States,* 15 Cl.Ct. 809, 813 (1988). In *Martinez v. United States,* 914 F.2d 1486, 1488–1489 (Fed.Cir.1990), the court held that plaintiff's failure to raise a claim in the military justice system waived that right in a later challenge in federal court; raising the claim before the ABCMR did not preserve plaintiff's right because the ABCMR did not have the authority to void plaintiff's court-martial conviction.

All other arguments of plaintiff were considered by the court and are deemed to be without merit.