Gary L. DOUGHARTY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–142C.

United States Court of Federal Claims.

Jan. 8, 1993.

J. Byron Holcomb, Bainbridge Island, WA, for plaintiff.

Donna C. Maizel, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

### MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross-motions for summary judgment. Plaintiff sought reinstatement in the Army and back pay for the period for which he was allegedly unlawfully discharged. Plaintiff argued that defendant's decision to terminate his service in the military was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

### I. FACTS

Plaintiff, former Staff Sergeant Gary L. Dougharty, entered the United States Army on November 13, 1975, and re-enlisted on November 13, 1987, serving continuously in active duty. On February 8, 1988, the Army assigned plaintiff to the 423rd Medical Company at Fort Lewis, Washington.

On June 27, 1988, plaintiff was involved in a verbal altercation in a convenience store and arrested for criminal trespass. Charges were not filed against plaintiff as a result of this arrest. Shortly thereafter, on July 12, 1988, Guadelupe Gutierrez, plaintiff's platoon sergeant, noted, in a memorandum for record, plaintiff's failure to follow instructions and "a total lack of motivation or dependability."

In 1989, plaintiff began experiencing domestic problems with his then wife, Cheryl. On February 3, 1989, the police arrested plaintiff for allegedly striking and choking his wife, and for resisting arrest. At trial, plaintiff's wife testified that she had fabricated the assault and the judge dropped both charges against plaintiff. On January 15, 1990, plaintiff held a gun to his wife's head and threatened to kill her. The police arrested plaintiff and charged him with second degree assault. Plaintiff pled guilty to third degree assault, a felony, on March 11, 1990, and served 15 days in jail. On March 15, 1990, Captain Rodney F. McBride notified plaintiff of his intent to initiate administrative discharge actions against him for a personality disorder. Captain McBride counseled[1] plaintiff about his behavior and decided to halt the discharge action against plaintiff. Captain McBride then rehabilitatively reassigned plaintiff to another platoon.

Plaintiff and his wife divorced in July 1990. Counseling sessions on July 30, 1990, addressed, *inter alia,* plaintiff's poor uniform appearance, his failure to inform commanders about changes in the platoon schedule, and his absence from an organized function. In order to allow plaintiff an opportunity to improve his performance, First Sergeant William E. Meeks relieved plaintiff of his position as that platoon's sergeant, and rehabilitatively reassigned plaintiff to another platoon on July 30, 1990.

On September 4, 1990, as a result of further unsatisfactory behavior, Captain McBride requested a rehabilitative transfer of plaintiff to another unit outside his current group. However, in October 1990, before a rehabilitative transfer was implemented, plaintiff requested and received a non-rehabilitative, lateral transfer to the

---

**1.** Counseling refers to a supervisor's evaluation of a subordinate's performance. The counseling may be either formal or informal, either written or verbal and either positive or negative.

Headquarters Company, Second Battalion, First Infantry Regiment, at Fort Lewis, Washington to "obtain a fresh start."

After the non-rehabilitative, lateral transfer, Staff Sergeant Ramon Rodriguez, in a memorandum dated November 26, 1990, recorded plaintiff's ineffectiveness as a noncommissioned officer and plaintiff's insubordination to fellow noncommissioned officers. On December 4, 1990, during a review of performance for the month of November, Second Lieutenant Benjamin Gonzalez, plaintiff's supervisor, counseled plaintiff on his poor performance. Lieutenant Gonzalez noted lack of training, lack of self motivation and lack of leadership skills in plaintiff's performance. On January 7, 1991, Lieutenant Gonzalez again counseled plaintiff, noting his inability to lead his platoon and his misconduct in not following orders. During this review, Lieutenant Gonzalez warned plaintiff that if no progress was shown administrative action would be taken.

A third review of plaintiff by Lieutenant Gonzalez took place on January 14, 1991, in which he noted that plaintiff's unsatisfactory performance and misconduct remained unimproved in the three and one-half months since plaintiff's transfer. Lieutenant Gonzalez again warned plaintiff that if his performance and conduct did not improve, he would be administratively discharged. The following day, plaintiff approached Lieutenant Gonzalez and warned him to be careful before initiating adverse actions against him. When Lieutenant Gonzalez asked him to be specific, plaintiff stated, "You will find out." On January 16, 1991, Lieutenant Gonzalez observed plaintiff going through Lieutenant Gonzalez's file on plaintiff without permission.

On January 28, 1991, Captain J. Sladen Bradley, company commander of plaintiff's new unit, indicated to plaintiff that his counseling records indicated no improvement in plaintiff's performance or behavior, and that he intended to initiate proceedings to effect his removal from the service. At this time, plaintiff was reassigned to work for Warrant Officer Thomas L. Rupe. Warrant Officer Rupe counseled plaintiff on Feb. 19, 1991, indicating that plaintiff's performance during the month of February was outstanding. From this point on, all counseling reports on plaintiff were exemplary. However, On April 1, 1991, Captain Bradley notified plaintiff that he was initiating an action recommending plaintiff's separation from the Army with a general discharge under honorable conditions for misconduct, pursuant to the pertinent Army regulations. The following day, after being advised of his rights, plaintiff chose to consult with counsel about the separation action. Plaintiff also elected consideration of his case by an administrative board, and requested an appearance before the administrative separation board.

On April 4, 1991, Captain Bradley recommended to the commander of the 2nd Battalion, 1st Infantry Regiment of Fort Lewis, Washington, that plaintiff be separated from the Army under AR 635–200, ch. 14, § III, para. 14–12b (1990), for a pattern of misconduct. Captain Bradley also requested a waiver of the rehabilitation requirements of AR 635–200, ch. 1, § II, para. 1–18, because "further attempts at rehabilitation would not be in the best interests of the Army."

Plaintiff appeared before an administrative separation board on May 13, 1991. Captain Michael J. Frey of the United States Army Trial Defense Service represented plaintiff at the hearing. Letters, counseling statements through January 1991, reports, and civil and military police records were admitted into the hearing record as documentary evidence without objection by plaintiff or his counsel. Two witnesses for the defendant testified that plaintiff exhibited poor supervisory and leadership skills, and failed to follow orders. Plaintiff, on the other hand, presented four witnesses who testified favorably about plaintiff's technical skills and recommended his retention in the Army. The board concluded that plaintiff engaged in misconduct by his involvement in at least two incidents with civil authorities, his poor duty performance in two distinct units over a period of less than three years, and his apparent lack of subordination to authority. The board recommended that: (1) plaintiff

be separated from the Army for misconduct, characterizing his service as general under honorable conditions; (2) separation should be suspended until November 9, 1991; and (3) plaintiff receive a rehabilitative transfer to a new unit.

Colonel Joseph C. Windle, the separation authority, approved the board's finding, but rejected the board's recommendations. On June 28, 1991, Colonel Windle waived the rehabilitation requirement in writing and directed plaintiff's commander to separate plaintiff from the Army immediately for a pattern of misconduct. Plaintiff was discharged from the Army on November 7, 1991. Plaintiff filed this suit on March 2, 1992 alleging that his separation and discharge from the United States Army was contrary to the statutes, rules and regulations of the Army, and requested that the court reinstate him to active duty with full back pay and allowances.

## II. DISCUSSION

■ Pursuant to the Tucker Act, 28 U.S.C. § 1491 (1988), the Court of Federal Claims has jurisdiction over claims for reinstatement in the Army and for back pay for the period of a claimant's unlawful separation. *Sargisson v. United States*, 913 F.2d 918, 920 (Fed.Cir.1990); *Wyatt v. United States*, 23 Cl.Ct. 314, 318 (1991).

■ Summary judgment is appropriate when there is "no genuine issue as to a material fact" so that the moving party "is entitled to judgment as a matter of law." RCFC 56(c). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States*, 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds*, 923 F.2d 830 (Fed.Cir.1991). In order to show that a material fact is genuinely at issue, the non-movant must do more than present "some" evidence on the disputed issue. *Liberty Lobby* 477 U.S. at 248–50, 106 S.Ct. at 2510–11. As the Supreme Court stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the non[-]moving party for a [court] to return a verdict

for that party. If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Plaintiff is bound by defendant's determination to separate plaintiff from the Army for a pattern of misconduct, unless he can establish by "cogent and clearly convincing evidence" that the decision was arbitrary, capricious, unsupported by substantial evidence or contrary to law. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir.1983); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979); *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973); *Wyatt*, 23 Cl.Ct. at 318–19. Plaintiff must establish the existence of error, and must also show "an adequate nexus between the error or injustice and [plaintiff's] separation from the service...." *Renicker v. United States*, 17 Cl.Ct. 611, 614 (1989); *see also Frecht v. United States*, 25 Cl.Ct. 121, 127 (1992). Thus, in reviewing the decision, the court must presume "that administrators of the military ... discharge their duties correctly, lawfully, and in good faith." *Sanders*, 594 F.2d at 813. Determining who is fit or unfit to serve in the armed forces is not a function of the judiciary. *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953); *Giglio v. United States*, 17 Cl.Ct. 160, 166 (1989). Although the court might disagree with the decision of the separating authority, it can not substitute its judgment for that of the separating authority when reasonable minds could reach differing conclusions. *Heisig*, 719 F.2d at 1156; *Sanders*, 594 F.2d at 814; *Frecht*, 25 Cl.Ct. at 128.

Plaintiff contended that the army acted contrary to regulation by: (1) considering his felony conviction; (2) establishing discreditable conduct with civil authorities without criminal convictions; (3) not providing him with counseling and a reasonable opportunity to overcome his deficiencies; (4) not following the Army's rehabilitation requirements; (5) not including his last two favorable counseling reports in the record before the separation board; and (6) including counseling reports from his previous unit in the record before the separation board.

### A. Consideration of Plaintiff's Felony Conviction was Proper

█ Plaintiff argued that the Army was prohibited from considering his felony conviction because it had already been the subject of an administrative proceeding. *See* AR 635–200, ch. 1, § II, para. 1–19b. Army regulations provide that separation "normally should not be based on conduct which has already been considered at an administrative or judicial proceeding and disposed of in a manner indicating that separation was not warranted." *Id.* Apparently plaintiff believed that Captain McBride's decision to halt discharge proceedings for a personality disorder after plaintiff's felony conviction constituted an administrative proceeding. However, the regulation does not permit such an interpretation. The regulation states:

No soldier will be considered for administrative separation because of conduct that—

(1) Has been the subject of judicial proceedings resulting in an acquittal or action having the effect thereof. . . .

(2) Has been the subject of a prior administrative board in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct . . ., or

(3) Has been the subject of an administrative separation proceeding resulting in a final determination by a separation authority that the soldier should be retained. . . .

*Id.*

Paragraph 1–19b is not applicable in this case, because plaintiff's conviction was not the subject of a prior administrative board proceeding or an administrative separation proceeding resulting in a final determination by a separation authority. Because Captain McBride was not a separation authority, his decision to halt the initiation of separation proceedings could not, even arguably, be considered a final determination as defined in AR 635–200, ch. 1, § II, para. 1–19b.

### B. Criminal Convictions are not Required to Establish Discreditable Conduct

█ Plaintiff argued that the Army violated its regulations by considering two instances of discreditable conduct with civil authorities that did not result in criminal convictions. The separating authority processed plaintiff for discharge for a pattern of misconduct under AR 635–200, ch. 14, § III, para. 14–12b, which describes a pattern of misconduct as "consisting of . . . [d]iscreditable involvement with civil or military authorities." Relying on *Quailes v. United States*, 25 Cl.Ct. 659, 664 (1992), plaintiff asserted that discreditable conduct was defined as three or more minor convictions within the past year. The definition in *Quailes*, however, is not applicable in this case because its definition of discreditable conduct came from the Navy Personnel Manual; not Army regulations. Army regulations define discreditable conduct as "conduct violative of the accepted standards of personal conduct found in the UCMJ [Uniform Code of Military Justice], Army regulations, the civil law, and time-honored customs and traditions of the Army." AR 635–200, ch. 14, § III, para. 14–12b(2). According to article 134 of the Uniform Code of Military Justice, discreditable conduct is conduct of which persons subject to the code may be guilty that tends to bring the service into disrepute or tends to prejudice. 10 U.S.C. § 934 (1988). Any conduct resulting in injury to the reputation of the service or a threat to good

order is discreditable conduct. *See United States v. Sadler*, 29 M.J. 370, 374 (C.M.A. 1990); *United States v. Davis*, 26 M.J. 445, 448 (C.M.A.1988).

Because, under Army regulations, discreditable conduct is not limited to criminal convictions, the separating authority properly considered plaintiff's involvement with civilian authorities even though the incidents did not result in conviction. The separating authority determined that the police reports in the record constituted proof of conduct that was injurious to the reputation of the service and threatened good order. Thus, the separating authority's conclusion was supported by evidence in the record and did not violate Army regulations.

## C. Plaintiff Received the Required Counseling

█ Plaintiff argued that because his two counseling reports immediately proceeding the separation proceeding were exemplary, he was not adequately counseled and given a "reasonable opportunity to overcome [his] deficiencies" as required by AR 635–200, ch. 1, § II, para. 1–18.[2] However, there is no support for plaintiff's tortured interpretation of the Army regulation in the administrative record.

The administrative record clearly demonstrates that plaintiff received counseling and an opportunity to cure his deficiencies, as required by paragraph 1–18, for more than a year prior to initiation of the discharge proceedings. In fact, appropriate authorities counseled plaintiff monthly on his unsatisfactory performance for the first four months after plaintiff's transfer to his new unit to "obtain a fresh start." Additionally, Lieutenant Gonzalez warned plaintiff on at least two occasions during that four month period that he would be discharged if his performance did not improve. This alone was sufficient under the paragraph 1–18b requirement of a "reasonable opportunity to overcome deficiencies." Paragraph 1–18b requires only one counseling prior to the initiation of a separation proceeding. *See* AR 635–200, ch. 1, § II, para. 1–18b. The fact that plaintiff changed his behavior after Captain Bradley informed him that he intended to initiate an elimination proceeding does not negate all previous attempts to counsel plaintiff.

## D. Rehabilitation Requirements were Met

Plaintiff argued that the separation authority violated Army regulation by initiating administrative separation processing without first following the rehabilitative requirements of AR 635–200, ch. 1, § II, para. 1–18c. Paragraph 1–18c requires that prior to the initiation of a separation action for a pattern of misconduct, a soldier must be reassigned at least between training companies or platoons, or transferred to another station permanently. AR 635–200, Ch. 1, § II, para. 18c. However, the requirement for a rehabilitative transfer may be waived. Paragraph 18d provides:

> The requirement for a rehabilitative transfer may be waived by a separation authority at any time on or before the date the separation authority approves or disapproves the separation. Waiver authority may be withheld by a higher separation authority in a particular case, class of cases, or all cases. Action to withhold waiver authority will be in writ-

> (1) Additional formal counseling is discretionary. Such factors as the length of time since the prior counseling, the soldier's conduct and performance during that period, and the commander's assessment of the soldier's potential for becoming a fully satisfactory soldier, should be considered in determining whether further counseling is necessary. The soldier's counseling or personnel records must establish that the soldier was afforded a reasonable opportunity to overcome the deficiencies.

---

**2.** Army Regulation (AR) 635–200, ch. 1, § II, para. 1–18 (1990), provides in pertinent part:
  a. *General.* Commanders will insure that adequate counseling and rehabilitative measures have been taken before initiating action to separate a soldier....
  b. *Counseling.* When a soldier's conduct or performance approaches the point where a continuation of such conduct or performance would warrant initiation of separation action ... he or she will be counseled by a responsible person about his or her deficiencies at least once before initiating separation action.

ing and will be valid until revoked in writing. Waiver must be based upon the determination of the separation authority that further duty of the soldier would—

(1) Create serious disciplinary problems or a hazard to the military mission or to the soldier, or

(2) Be inappropriate because the soldier is resisting rehabilitation attempts, or

(3) Rehabilitation would not be in the best interests of the Army as it would not produce a quality soldier.

AR 635–200, ch. 1, § II, para. 18d.

■ Pursuant to paragraph 1–18d, Colonel Windle, the separation authority, specifically waived the rehabilitation requirement of AR 635–200, ch. 1, § II, para. 1–18c in writing. Plaintiff argued that the waiver was not valid under paragraph 1–18d, because the waiver did not state in writing the reasons upon which it was based. Plaintiff's argument has no merit. Paragraph 1–18d, does not either suggest or imply that the reasons for waiving rehabilitation must be stated in writing. The regulation only requires that an action by a higher separation authority to withhold waiver authority from a lower separation authority must be in writing. This was not the case here. Although plaintiff cites *Cohn v. United States*, 15 Cl.Ct. 778 (1988), to support his position, *Cohn* does not stand for the proposition plaintiff states. In *Cohn*, the court stated that a commander's failure to state his reasons for denying probation and rehabilitation does not tarnish a discharge proceeding. 15 Cl.Ct. at 795. An explanation of the separating authority's determination may be prudent, but paragraph 1–18d simply does not require that the determination upon which the waiver is based be in writing.

■ Even assuming, *arguendo*, that the waiver by Colonel Windle was not valid, the requirement for rehabilitative transfer was met. According to the administrative record, plaintiff's commander transferred plaintiff for rehabilitation to other platoons on March 16, and on July 30, 1990. These transfers alone fulfill the requirements of rehabilitation under paragraph 1–18c. Fur-

ther, plaintiff's lateral transfer in October of 1990 would meet the requirement of paragraph 1–18c. The regulation merely requires that a soldier will be reassigned—there is no requirement that the reassignment be labeled a rehabilitative transfer. It is clear from the record that plaintiff had opportunities to rehabilitate himself through transfers, meeting both the spirit and letter of paragraph 1–18c. The fact that plaintiff appeared willing to rehabilitate himself after Captain Bradley initiated elimination proceedings does not negate the Army's previous attempts to rehabilitatively transfer plaintiff.

*E. Failure to Admit Favorable Counseling Reports into the Record was not Improper*

■ Plaintiff contended that his last two favorable counseling reports from Warrant Officer Rupe prior to the initiation of separation proceedings were improperly omitted from the administrative record and that without this evidence the record was incomplete. However, "evidence and argument not presented to the ... board may not now be considered [by the court], absent a showing that the evidence was unavailable below." *Alligood v. United States*, 14 Cl.Ct. 11, 20 (1987); *accord Wyatt v. United States*, 23 Cl.Ct. 314, 319 (1991). The record indicates that plaintiff failed to admit the favorable counseling reports into the record as evidence even though they were available at the time. Because plaintiff failed to show that the counseling reports were unavailable at the hearing, the court's analysis must be based solely on the administrative record presented before the separating authority.

Further, plaintiff's failure to introduce the favorable reports into the record did not prejudice plaintiff because Warrant Officer Rupe testified at the hearing and submitted a written statement of plaintiff's performance to the board, thereby entering his favorable evaluation of plaintiff into the record. In addition, three other witnesses testified favorably before the board of plaintiff's conduct and recommended plaintiff's retention by the Army. As a result,

plaintiff may not be heard to validly claim that the record was incomplete or that his failure to admit the counseling reports harmed him.

#### F. Consideration of Counseling Forms was not Violative of Army Regulations

 Plaintiff argued that the Army violated its regulations by considering counseling forms dated prior to his non-rehabilitative reassignment in October 1990. At the bottom of the general counseling form (DA Form 4856) is the statement that the form "will be destroyed upon ... reassignment (other than rehabilitative transfers), separation at ETS, or upon retirement." Based on the wording of the form, plaintiff asserted that the counseling forms dating back before his non-rehabilitative, lateral reassignment in October 1990 were to be destroyed. Plaintiff argued that because these counseling forms were not destroyed and were instead included in the administrative record, and because the board and the separation authority considered these forms when making their decisions to discharge plaintiff, the counseling forms tainted the discharge proceeding.

However, the disposition instructions on the form directly contradict Army regulations. AR 635–200, Ch. 1, § II, para. 1–17d provides that a separation authority may consider a soldier's entire military record in deciding whether to retain or separate a soldier, *including* counseling records. The court was not provided with any information which indicates that the statement on the counseling forms was mandated by Army regulation, rule or policy. Accordingly, based upon a clear reading of AR 635–200, Ch. 1, § II, para. 1–17d, the court concludes that the separating authority did not err in considering plaintiff's counseling forms dated prior to his non-rehabilitative reassignment in October 1990.

### III. CONCLUSION

For the reasons stated above, the court denies plaintiff's cross-motion for summary judgment and grants defendant's motion for summary judgment. In so doing the court finds that there was sufficient evidence in the record to conclude that the decision to terminate plaintiff's service was not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence. Accordingly, plaintiff's complaint is dismissed. Costs.

IT IS SO ORDERED.