Monroe QUAILES, Jr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1437C.

United States Claims Court.

April 14, 1992.

Monroe Quailes, Jr., pro se.

Virginia Lum, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on cross-motions for summary judgment. The issue is whether plaintiff was

properly separated from the military for misconduct instead of disability.

### FACTS

Monroe Quailes, Jr. ("plaintiff"), appearing pro se, requests disability payments and other benefits, including correction of his military records to show that he suffered and continues to suffer from Post–Traumatic Stress Disorder ("PTSD") and should have been retired at a 100–percent medical disability rating.

Plaintiff enlisted in the United States Army (the "Army") on February 13, 1968; he reenlisted for a period of 6 years on April 13, 1969.[1] Plaintiff completed two tours of Vietnam—July 4, 1968 to January 3, 1970, and April 4, 1971 to January 31, 1972—attaining the rank of Specialist Fifth Class (E–5). Plaintiff served as a quarry machine operator and a cook, receiving awards and commendations for his service. Plaintiff's service, however, was also marked by a few minor offenses, including theft of a motor vehicle registration decal and unauthorized absence from place of duty on January 20, 1973; October 27, 1973; and October 28, 1973.

After returning stateside in 1972, plaintiff worked as a cook in the Military District of Washington, performing average or below average in his duties. According to a June 12, 1979 report from the Psychiatric Service department at the National Naval Medical Center, Bethesda, Maryland (the "Bethesda Psychiatric Report"), plaintiff began experiencing psychiatric problems including "increasing difficulty controlling his temper, fantasies of violent behavior with frightening concern over losing control[, and] bouts of crying spells and depression accompanied by thought disorganization and confusion...." The Bethesda Psychiatric Report notes one incident, during sexual intercourse, when plaintiff " 'jumped up, convinced that something strange was happening to him, [and] began screaming and choking his girlfriend.' " This type of behavior was repeated on several occasions lasting for many months at a time, according to the same report.

According to plaintiff's mother, in a letter she wrote to Navy command, dated February 4, 1989, plaintiff's behavior markedly changed upon his return from his first tour in Vietnam in 1969. She stated:

> [S]ince ... his first return from Vietnam [he has] been a different person ... I mean ... angry, and wanting to be alone. He could not stand any noises ... he was nervous, jumpy, alert and very defensive and sometimes acted like he was in another world and didn't know his family, not even his mother....

Plaintiff alleges, however, that he was unaware of the nature of his actions and, therefore, designated "no," in response to an Army questionnaire dated May 6, 1970, asking if he had a history of mental or nervous disorders.

On October 1, 1973, plaintiff attempted suicide by taking an overdose of Benadryl. Plaintiff participated in an out-patient program at Walter Reed Army Medical Center, as a result, but no psychiatric follow-up was undertaken, according to the Bethesda Psychiatric Report.

On March 24, 1975, plaintiff presented himself for a routine separation physical examination in preparation for his April 11, 1975 separation from the Army. The examination revealed no psychiatric problems, and plaintiff was honorably discharged.

In July 1975, according to the Bethesda Psychiatric Report, plaintiff again attempted suicide by drinking after-shave lotion and attempting to hang himself while incarcerated in the Talbot County, Maryland jail for burglary. After being transferred to Clifton T. Perkins Prison, he attended another out-patient program at St. Elizabeth's Hospital for 8 to 10 months and was placed on tranquilizers. In May 1976 plaintiff stopped taking the medication.

On May 14, 1976, plaintiff enlisted in the United States Navy (the "Navy"). The

---

**1.** Plaintiff requests that his date of entry on duty be changed from April 13, 1969, to February 13, 1968. The discharge certificate issued to plaintiff when he reenlisted on April 13, 1969, reflects the date of February 13. This request need not be addressed further.

Navy medical entrance form, dated April 26, 1976, contains a handwritten statement by plaintiff which reads: "[S]aw a doctor or phy. for about 2 months on a weekly basis because of ideas and problems uprising me about my girlfriend." Defendant claims the Navy had no knowledge of the severity of plaintiff's mental condition.

Plaintiff was assigned to the USS HAW-KINS where he suffered from severe bouts of sea sickness, thought disorganization, and paranoid delusions. Plaintiff alleges that he was denied relief from his duties or an opportunity to see a physician, according to the Bethesda Psychiatric Report. Upon return to port, plaintiff was absent without leave ("AWOL") on and off for 2 to 4 months. Plaintiff recalls an inability to organize his thoughts, severe insomnia, and loss of appetite during this period. On December 28, 1976, plaintiff was arrested and charged with several incidents of breaking and entering. While in police custody, plaintiff was diagnosed at the state hospital for the criminally insane as suffering from paranoid schizophrenia, but found competent to stand trial. Plaintiff was subsequently sentenced to 10 years in prison.

Plaintiff was paroled to the Navy on March 20, 1979. Upon returning to military custody, plaintiff was charged with unauthorized absence offenses and referred to a Special Court Martial. During the pre-trial proceedings, plaintiff's counsel requested that plaintiff undergo a medical examination. Pursuant to this request, plaintiff underwent a review by the medical and psychiatric boards at the Navy Medical Center, Bethesda, Maryland.

The psychiatry board report, dated June 12, 1979, was based on two 50–minute interviews with plaintiff, as well as information derived from plaintiff's service record, health record, a copy of the charges against him, and plaintiff's inpatient health record from Clifton T. Perkins Hospital. The report recites, in paragraph 2, the history of plaintiff's psychiatric problems, and notes that "[t]he patient's psychiatric history began in 1969 following his return from his first duty assignment in Vietnam." In

paragraph 3 the report states that plaintiff "[d]enies any other psychiatric disability prior to entry into the military." In paragraph 6 plaintiff is diagnosed as suffering from "schizophrenia, chronic undifferentiated," since 1969. The report concludes in paragraph 7:

It was the opinion of the Board that SN Quailes is competent to participate in his own defense and cooperate with his defense lawyers regarding his charges. It should be further stated that at the time of his unauthorized absences (all above days and for that matter during his subsequent burglaries) the patient was suffering from a mental disease (schizophrenia) and as a result of this mental disease was able to appreciate the criminality of his conduct but lacked the substantial capacity to conform his conduct to the requirements of the law.

The medical board issued a report dated May 1, 1979. This report begins by noting that "[t]he patient's psychiatric history began in 1969, following his first duty assignment in Vietnam." The remainder of the report summarizes the history of plaintiff's medical treatment since 1969, concluding that plaintiff suffers from "schizophrenia, paranoid type, as manifest by confusion, agitation, overinclusive thinking, loose associations and paranoid delusions ... [p]recipitating stress mild (routine duty assignment); predisposition severe (chaotic and emotionally depriving family life); impairment severe for military service, moderate impairment for civilian adjustment." The medical board referred the case to the Central Physical Evaluation Board (the "CPEB") for review. As a result of these findings, the pending court martial was withdrawn with prejudice.

Due to plaintiff's civilian convictions, the Navy moved for his separation. On July 17, 1979, plaintiff, under advice of counsel, agreed to a honorable discharge. On August 20, 1979, plaintiff underwent a standard separation physical. The reviewing medical officer's evaluation indicated an "abnormal" psychiatric condition—diagnosed as "schizophrenia, paranoid type

(# 2953)." Plaintiff was found qualified for discharge.

In August 1979 plaintiff applied to the Veterans Administration (the "VA") for a disability rating. Plaintiff remained under VA medical care since his Navy discharge. In 1982 and again in 1983 plaintiff was hospitalized for psychiatric problems at the Loch Raven VA Medical Center in Baltimore, Maryland, according to an October 3, 1986 Discharge Summary from the VA Hospital in Coatesville, Pennsylvania. Plaintiff complained of auditory and visual hallucinations and referential ideation and believed that people conspired against him. Plaintiff was placed on Thorazine and discharged with instructions to attend an outpatient clinic, according to a report from the Dorchester County Mental Health Clinic, Cambridge, Maryland. The 1986 Discharge Summary states that plaintiff "was given the diagnoses of Organic Personality Syndrome, Post Traumatic Stress Disorder, [C]hronic, and Intermittent Explosive Disorder, and Partial Complex Seizures. The report further states: "[I]t is doubtful that this patient can maintain a full time job. He is at best marginally employable" but goes on to conclude that he is "COMPETENT to handle funds due him."

In 1986 plaintiff returned to civilian life and obtained employment as an assembly line worker. The 1986 Discharge Summary reflects that plaintiff complained, however, that "he could not get along over there [at his assembly line job], he was nervous around people, and he could not keep up with his supervisor's demands. He had impulses to act on her [the supervisor]...."

In April 1987 plaintiff applied to the Board for the Correction of Naval Records (the "BCNR") requesting retroactive placement on the disability retired list. The BCNR sought advisory opinions from the Navy's CPEB and the Naval Military Personnel Command. The CPEB report dated January 12, 1989, makes two findings:

1) A review of the available records discloses the petitioner had a history of treatment for psychiatric and nervous troubles since he was 18 years old, prior to entry into the Army in April of 1968

and prior to entry into the Navy in May 1975. There is also a history of having few friends in high school and being a loner.

2) It is the opinion of the Central Physical Evaluation Board (CPEB) that the petitioner's mental illness predated his service entry. The records do not document sufficient impairment by his mental illness to overturn his administrative discharge for misconduct. The CPEB recommends the petition before the BCNR be denied insofar as benefits administered by the Department of the Navy are concerned.

The Naval Military Personnel Command opinion, dated March 29, 1989, briefly recounts the history of plaintiff's medical problems since entering the Navy. The opinion concludes that plaintiff's "condition appeared to exist prior to entering the [N]aval service and no evidence exists that his condition was [the] result of his [N]aval service;" therefore, "discharge without disability payment is appropriate."

The BCNR issued its opinion on January 30, 1989, denying plaintiff's request for a disability rating of 100 percent. Documentation before the BCNR consisted of plaintiff's application and materials submitted; Naval records; rating decisions by the VA; the advisory opinions of the Naval Military Personnel Command dated March 29, 1988; and the CPEB dated January 12, 1989.

In a letter dated January 7, 1989, plaintiff requested reconsideration of his administrative discharge. The letter made three central arguments. First, the CPEB violated plaintiff's due process rights under the fifth and fourteenth amendments because the CPEB did not act immediately following the Medical Board examination of May 1, 1979, and Sanity Board Examination of June 12, 1979. Second, a presumption exists under the law that mental illness manifesting itself while a person is in military service is service-connected or at least service-aggravated. Moreover, this presumption may only be rebutted by established medical principles, which plaintiff claimed have not been met. Finally, in contradiction to the CPEB's report, plaintiff ar-

gued that he did not suffer from any mental or nervous disorder prior to 1968. On March 3, 1989, plaintiff made a further offer of additional information to the BCNR consisting of excerpts from the Manual of the Judge Advocate General.

In response to plaintiff's request for further consideration, the BCNR sent a letter, dated September 26, 1991, to plaintiff reaffirming its January 30, 1989 decision not to grant plaintiff disability status. The letter stated: "The additional evidence which you submitted in support of your request was insufficient to establish that your discharge was improper or that you were unfit for further service by reason of a physical disability which was incurred in or aggravated by your period of naval service."

## DISCUSSION

■ The reviewing court cannot overturn a determination made by the military with respect to disability retirement absent a violation of a statute or regulation, *see Curry v. United States,* 221 Ct.Cl. 741, 746, 609 F.2d 980, 983 (1979), unless plaintiff shows " 'by cogent and clearly convincing evidence,' " that such a determination is arbitrary, capricious, or unsupported by substantial evidence. *Finn v. United States,* 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977) (quoting *Stephens v. United States,* 174 Ct.Cl. 365, 371–72, 358 F.2d 951, 954 (1966)). "Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm. . . ." *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985). Additionally, the Federal Circuit in *Heisig v. United States,* 719 F.2d 1153 (Fed.Cir.1983), stated:

> It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

719 F.2d at 1156 (footnotes omitted).

■ In military pay matters, the court reviews a plaintiff's case "through the prism of a correction board." *Cohn v. United States,* 15 Cl.Ct. 778, 789 (1988). The scope of judicial review is narrow: To overturn the board's decision, plaintiff must prove by cogent and clearly convincing evidence (1) a material legal error or injustice in the correction board proceeding and (2) an adequate nexus between the error or injustice and his separation from service without 100–percent disability compensation. *Hary v. United States,* 223 Ct. Cl. 10, 15, 618 F.2d 704, 706 (1980). Further, plaintiff must overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States,* 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979) (citations omitted). Although the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of a disputed fact. *Heisig,* 719 F.2d at 1156.

Plaintiff prosecutes his complaint *pro se.* The court has endeavored to understand his arguments, a task made difficult because plaintiff cites to a number of regulations and other directives that do not reveal their relevance to the points that he attempts to make. After the court obtained the documents to which plaintiff referred, argument was held to clarify plaintiff's points. Ultimately, despite these efforts, including plaintiff's own able presentation in court, some of plaintiff's allusions do not make sense and, therefore, cannot be addressed satisfactorily.

Plaintiff asserts that his separation is improper for the following reasons:

■ 1) The separation violates controlling Navy statutes 10 U.S.C. §§ 1214, 1218 (1988), guaranteeing members of the armed forces separated for physical disability the right to a full and fair hearing and the right to make a claim for compensation with the VA. Plaintiff does not have a valid claim under 10 U.S.C. §§ 1214, 1218 because both statutes address situations, unlike plaintiff's, wherein the member is separated for physical disability. Plaintiff in this case was separated for misconduct, not disability.

2) The separation violates the fifth and fourteenth amendments' guarantees of due process and equal protection. This court does not have jurisdiction to hear these claims because neither the due process or equal protection clauses of the Constitution "obligate the United States to pay money damages" and, therefore, "do not trigger Tucker Act jurisdiction in the courts." *Mullenberg v. United States*, 857 F.2d 770, 772–73 (Fed.Cir.1988) (citing cases).

3) The separation violates the Manual of the Judge Advocate General, ch. VIII, ¶ 0807 (1978 ed.), Line of Injury and Misconduct (Injury, Disease and Death), concerning member's responsibility for acts and their foreseeable consequences when the member is unable to comprehend the nature of his acts or unable to control his actions resulting from a mental condition. Paragraph 0807 provides:

> a. General rule. A member may not be held responsible for his acts and their foreseeable consequences if, as the result of mental defect, disease, or derangement, he was unable to comprehend the nature of such acts or to control his actions. Additionally, a member may not be held responsible for his acts or their foreseeable consequences if, as a result of the mental condition not amounting to a defect, disease, or derangement and not itself the result of prior misconduct, he was unable to comprehend the nature of such acts and to control his actions....

4) The August 24, 1979 decision to separate plaintiff without a prior evaluation of his mental condition by the CPEB was arbitrary or capricious and violated BUMED INSTRUCTION 6120.6C(5) and NAVMED 6100/2 (Rev. 1–74). Points 3 and 4 are discussed below.

After carefully scrutinizing the administrative record and plaintiff's claims, this court finds that plaintiff failed to demonstrate by cogent and clearly convincing evidence that the BCNR's determination to

uphold plaintiff's current disability status is arbitrary, capricious, or unsupported by substantial evidence. This finding is directly supported by Navy regulations permitting the separation of military personnel for civil misconduct, as well as procedures for separation where plaintiff was under consideration for military disability.

### 1. *The Navy's right to separate members for civil misconduct*

The Bureau of Navy Personnel Manual (1 July, 1969, change Apr. 1979) ¶ 3420185,[2] Procedures for Processing Enlisted Personnel for Discharge by Reason of Misconduct, explicitly permits a discharge for civil misconduct if "directed or authorized by the chief of Navy Personnel." The Bureau of Naval Personnel Manual delineates several examples of misconduct that would permit such separation, including "[f]requent involvement of a discreditable nature with civil ... authorities," which is defined to require "a minimum of three or more minor civil convictions ... within the past year...." ¶ 3420185(1)(a). In addition, the Navy Personnel Manual permits separation based on felony convictions. ¶ 3420185(1)(e). In this case it is uncontested that plaintiff was convicted of several felonies and sentenced to 10 years in prison, thereby coming within the purview of ¶ 3420185(1)(a) and (e).

Plaintiff argues, however, that under chapter VIII, ¶ 0807 of the Manual of the Judge Advocate General (JAG Manual), separation based on his civil convictions is improper because his civil misconduct is the result of a mental condition, not the result of prior misconduct. This argument is misguided because the JAG Manual is inapplicable to the case at bar. The JAG Manual is limited to the governance of administrative fact-finding investigations made by the Judge Advocate General. (JAG Manual ch. II § 0201 (1990)). In this case, no such investigation was conducted, or even alleged. Moreover, paragraph 0801 provides that "[p]hysical evaluation determinations

---

**2.** The Bureau of Navy Personnel Manual was in effect in 1979, but is superseded by the current

Navy Personnel Command Manual.

are made independently and are not controlled by misconduct-line of duty findings or conclusions recorded under the provision of this Manual. They are instead controlled by regulations contained in the Disability Evaluation Manual (SECNAVINST ¶ 1850.4)...."

■ Plaintiff further argues that his separation is improper because the Navy dismissed the Special Court Martial against him based on the findings of the Sanity Board. This argument fails because the Special Court Martial concerned charges for desertion only and was entirely separate from the adjudication of plaintiff's felony convictions in Maryland.

2. *The Navy's right to separate members in cases involving concurrent disability and disciplinary action*

■ Pursuant to SECNAVINST ¶ 1850.4 § 0229 Cases Involving Concurrent Disability and Disciplinary Action,[3] when discharge of a member for misconduct is pending and a medical board report has been prepared, no action should be taken pending the outcome of the disciplinary action. If, as a result of the disciplinary action the member is separated from the Navy, the Chief of Naval Personnel may recommend disability evaluation proceedings, which may lead to disability evaluation processing. Disability processing is not required, and the member may be separated based solely on the disciplinary processing.

Determination of plaintiff's disability status was suspended pending the outcome of the administrative decision of whether to separate plaintiff for misconduct. On May 1, 1979, after being returned to military custody from the State of Maryland, plaintiff was evaluated for a disability rating by the medical board at the National Naval Medical Center in Bethesda, Maryland. The medical board subsequently referred the matter to the CPEB. While the CPEB was processing plaintiff's case, plaintiff's commander determined that he should be administratively separated based on his civil misconduct. At this time the Chief of Naval Personnel authorized plaintiff's separation for misconduct and instructed the CPEB and the Bureau of Medicine and Surgery to cease processing plaintiff's disability claim.

Plaintiff argues that his separation violated BUMED INSTRUCTION 6120.6C(5), concerning physical examination prior to separation from active duty, and NAVMED 6100/2 (Rev. 1–74), concerning a patient's acknowledgment of the medical board findings, because the Navy did not continue processing his disability after his separation. Plaintiff cites to NAVMED 6100/2 (Rev. 1–74) STATEMENT OF PATIENT CONCERNING THE FINDINGS OF A MEDICAL BOARD, signed by plaintiff June 22, 1979, indicating that plaintiff acknowledged the medical board's recommendation that his "case be referred to the Office of Naval Disability Evaluation (CPEB)."

Neither BUMED INSTRUCTION 6120.-6C(5) or NAVMED 6100/2 (Rev. 1–74) requires the continuation of plaintiff's disability processing. BUMED 6120.6C(5) only directs that plaintiff be informed of the medical board report and be given an

---

**3.** SECNAVINST ¶ 1850.4, § 0229 Cases Involving Concurrent Disability and Disciplinary Action provides, in pertinent part:

> When a medical board report has been prepared and the member is pending discharge proceedings by reason of misconduct or disciplinary proceedings which could result in a punitive discharge or dismissal, the report will be submitted to the ... Chief of Naval Personnel ... via the Chief, Bureau of Medicine and Surgery. [T]he Chief of Naval Personnel ... will take no action in the report pending completion of the disciplinary action. If as a result of the administrative or discipli-

> nary action, the member is separated from the Naval Service, the medical board report will be returned to the Chief, Bureau of Medicine and Surgery for filing in the member's terminated health record. Nothing in the foregoing section shall preclude the ... Chief of Naval Personnel from recommending disability evaluation proceedings in an individual case which recommendation if concurred in by the Director, Naval Council of Personnel Boards shall result in the member's disability evaluation processing. If the Director, Naval Council of Personnel Boards does not concur, the case shall be forwarded to the Secretary for decision.

opportunity to rebut. A review of NAVMED 6100/2 signed by plaintiff on June 22, 1979, indicates that plaintiff was informed of the medical board findings and his opportunity to rebut these findings. Plaintiff has failed to substantiate his claim that the medical board's referral to the CPEB required continuation of his disability processing.

In addition, SECNAVINST ¶ 1850.4, § 0229 clearly indicates that it is within the discretion of the Chief Naval Officer whether to proceed with a disability rating or separate the member solely on misconduct, without a disability rating, as long as a final determination as to disability retirement has not been made. Procedurally this case is similar to *Yount v. United States*, 25 Cl.Ct. 289 (1992), wherein the court held that the Secretary of the Air Force properly separated a member for misconduct although he may have been qualified for disability retirement. The court explained that "[i]n dual processing situations, the Secretary must exercise his discretion as to whether the serviceman should be separated for misconduct or disability." *Id.* 25 Cl.Ct. at 292. Moreover, this discretion is available until a "final determination" as to the serviceman's disability retirement is made. *Id.*

This court does not have the authority to substitute its judgment for that of the Navy in determining who should be separated for misconduct and who should be separated for disability. *Heisig*, 719 F.2d at 1156; *Maier*, 754 F.2d at 984. The Chief Naval Personnel Officer based his decision on the recommendation from plaintiff's command that plaintiff should be separated for misconduct and on the report from the medical board that plaintiff's condition "appeared to exist prior to entering the [N]aval service and no evidence exist[s] that his condition was the result of his [N]aval service...." Plaintiff failed to show by cogent and clearly convincing evidence a material legal error or injustice in the correction board proceeding. *Hary*, 223 Ct.Cl. 10, 15, 618 F.2d at 706.

## CONCLUSION

Accordingly, based on the foregoing defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.

No costs.