# In the United States Court of Federal Claims

No. 12-327 C
(Filed: March 27, 2013)

**************************************
* 
MONROE QUAILES, JR.,                * 
                                    *       Pro se; Wrongful Discharge from Navy;
                Plaintiff,          *       General Discharge by Reason of Misconduct;
                                    *       Disability Benefits; Subject Matter
        v.                          *       Jurisdiction; Statute of Limitations; Board
                                    *       for Correction of Naval Records;
THE UNITED STATES,                  * 
                                    *
                Defendant.          *
                                    *
**************************************

*Monroe Quailes, Jr.*, Hurlock, Maryland, pro se.

*Corinne A. Niosi*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.


## OPINION

**DAMICH,** Judge:

Plaintiff, Monroe Quailes Jr., appearing pro se, challenges his 1979 discharge from the United States Navy ("Navy") and the 1989 adverse disability determination of the Board of Corrections for Naval Records ("BCNR"). Defendant, United States ("the Government"), now moves the court, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), to dismiss Plaintiff's action for lack of subject matter jurisdiction due to the expiration of the statute of limitations. In the alternative, defendant seeks dismissal pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons set forth below, despite the court's recognition of the difficulties in seeking redress that Plaintiff has encountered over the years, it is compelled to GRANT the Government's motion to dismiss for lack of jurisdiction.

I.      Background

The instant complaint is the second occasion in which plaintiff has come to this court

-1-

seeking relief relating to his military service and discharge from the United States Navy. *See Quailes v. United States*, 25 Cl. Ct. 659 (1992), *aff'd,* 979 F.2d 216 (Fed. Cir. 1992).

### A. Service in the United States Army

Plaintiff's military service actually began with the United States Army (the "Army") on February 13, 1968. *Quailes,* 25 Cl. Ct. at 660. Shortly thereafter, he was sent to Vietnam where he served two tours as a quarry machine operator and a cook. After plaintiff returned from Vietnam on January 31, 1972, he began experiencing psychiatric problems. *Id.* The psychiatric problems consisted of "increasing difficulty controlling his temper, fantasies of violent behavior with frightening concern over losing control [, and] bouts of crying spells and depression accompanied by thought disorganization and confusion." *Id.* Additionally, on October 1, 1973, plaintiff attempted suicide by taking an overdose of Benadryl. *Id.* He received outpatient treatment at Walter Reed Army Medical Center, but "no psychiatric follow-up was carried out." Def.'s Mot. to Dismiss, App. at 27 ("Def.'s App."). Inexplicably, despite this psychiatric history, the report of a routine physical examination undertaken in March 1975 in preparation for separation from the Army in April of that year, reflected "no psychiatric problems," and Plaintiff was honorably discharged. *Quailes*, 25 Cl. Ct. at 660. In July of 1975, he received outpatient psychiatric care at St. Elizabeth's Hospital in Washington, D.C., "following a suicide attempt." Def.'s App. at 27.

### B. Service in the United States Navy

Somewhat surprisingly, in light of the indications of his troubled history, on May 14, 1976, plaintiff was accepted back into military service, enlisting in the United States Navy. *See id*. at 1. Shortly after enlisting, plaintiff went "AWOL" (absent without leave) from August 4, 1976, to August 6, 1976, and again from August 6, 1976, to September 1, 1976. *Id*. at 14. Plaintiff voluntarily surrendered to military authorities and received a non-judicial punishment. *Id.* at 6, 14. He was transferred to the USS Hawkins, Norfolk, Virginia. *Id*. at 6.

During plaintiff's assignment on the Hawkins, he suffered from severe bouts of sea sickness, thought disorganization, and paranoid delusions. *Id*. at 76. Upon returning to port, plaintiff began another period of "unauthorized absence" on October 7, 1976. *Id*. at 3. He was declared a "deserter" on November 7, 1976. *Id*. at 4. On December 29, 1976, plaintiff was arrested by civilian authorities in Easton, Maryland, charged with housebreaking, burglary, and grand larceny, and incarcerated at the Talbot County Jail. *Id*. at 19-20. On March 17, 1977, the FBI located plaintiff and notified the Navy that he was in the Clifton T. Perkins Hospital in Jessup, Maryland. *Id*. at 16. He had been transferred from the jail to the hospital after a suicide attempt. *Id*. at 20. Although he originally pled not guilty by reason of insanity, on December 20, 1977, he withdrew that plea and pled guilty to grand larceny and breaking and entering. *Id*. He was subsequently sentenced to 10 years in prison, with 5 years suspended. *Id.* While incarcerated, he was informed by the Navy in July 1978 that he was being recommended for discharge "by reason of misconduct because of conviction by civil authorities." *Id.* at 21. On March 20, 1979, plaintiff was released on parole to the custody of the Navy. *Id.*

Upon returning to the custody of the Navy, plaintiff was charged with "unauthorized absence" offenses and was initially referred to a Special Court Martial. *Quailes,* 25 Cl. Ct. at 661. During the pre-court martial proceedings in the spring of 1979, plaintiff's counsel requested that plaintiff undergo a medical examination. *Id.* Accordingly, he was reviewed by psychiatric and medical boards under the auspices of the National Navy Medical Center in Bethesda, Maryland. *Id.* The medical board issued a report on May 1, 1979, detailing plaintiff's psychiatric history since 1969 and noting that he suffered from schizophrenia. Def.'s App. at 26-33. The medical board recommended that plaintiff's case be referred to the Physical Evaluation Board ("PEB") for a disability determination. *Id.* at 32. The psychiatric board (also referred to as the "sanity board") report, dated June 12, 1979, incorporating language taken largely verbatim from the medical board report, diagnosed Plaintiff with "Schizophrenia, chronic undifferentiated," but concluded that Plaintiff was "competent to participate in his own defense and cooperate with his defense lawyers regarding his charges." Def.'s App. at 39. It noted that his unauthorized absences and burglaries had been concurrent with his "mental disease (schizophrenia)," and that, as a result of his mental disease, while he "was able to appreciate the criminality of his conduct, he "lacked the substantial capacity to conform his conduct to the requirements of the law." *Id.* at 37-39. Mr. Quailes signed an acknowledgement on June 22, 1979, indicating he was aware of the medical board's report and recommendation. *Id.* at 34. As a result of the medical and psychiatric board findings, the pending court martial was withdrawn with prejudice. *Id.* at 20, 52. The notation of "desertion" in his record was removed as "erroneous." *Id.* at 52.

Even though it had withdrawn the court martial, the Navy nevertheless moved for plaintiff's separation due to his civil convictions. *Quailes,* 25 Cl. Ct. at 661. On July 17, 1979, Plaintiff agreed to waive his right to an "administrative discharge board" in exchange for a "general," rather than an "other than honorable," discharge from the Navy. Def.'s App. at 23-24. The "Memorandum Agreement" acknowledges that he was represented by counsel at the time. *Id.* at 23. On August 20, 1979, plaintiff underwent a standard separation physical. *Quailes,* 25 Cl. Ct. at 661. The reviewing medical officer noted plaintiff's "abnormal" psychiatric condition – diagnosed as "schizophrenia, paranoid type (#2953)." *Id.* at 661-62. Again, despite his pending mental health issues, he was found qualified for discharge. *Id.* There is no indication in the record that the PEB had proceeded nor any determination reached regarding Mr. Quailes's entitlement to disability benefits. Subsequently, on August 24, 1979, Mr. Quailes was formally separated from the Navy with a "general discharge by reason of misconduct – convicted by a civil court during current term of military service." Def.'s App. at 7.

### C. Application to Board for Correction of Naval Records

Approximately eight years after his discharge, on April 21, 1987, Mr. Quailes applied to the Board for Correction of Naval Records ("BCNR") challenging the propriety of his discharge and seeking retroactive disability benefits. *Id.* at 123. On January 30, 1989, based in large part on advisory opinions of the Naval Military Personnel Command ("NMPC") and the Central Physical Evaluation Board ("CPEB"), the BCNR denied his application for correction of records. *Id.* at 116. The NMPC had advised, "Since member's condition appeared to exist prior to entering the naval service and no evidence exist [sic] that his condition was result of his naval service his discharge without disability payment was appropriate." *Id.* at 122. The CPEB

reported, "A review of the available records discloses the petitioner had a history of treatment for psychiatric and nervous troubles since he was 18 years old, prior to entry into the Army in April 1968 and prior to entry into the Navy in May 1975," citing a history of "violent abuse" by an alcoholic father. *Id*. at 120. The CPEB advised,

> It is the opinion of the Central Physical Evaluation Board (CPEB) that the petitioner's mental illness predated his service entry. The records do not document sufficient impairment by his mental illness to overturn his administrative discharge for misconduct. The CPEB recommends the petition before the BCNR be denied insofar as benefits administered by the Department of the Navy are concerned.

*Id*.

In three letters to the BCNR between January 1989 and May 1989, Plaintiff sought reconsideration of the Board's decision. *Id.* at 108-14, 101-07, 100. Among other grounds, Mr. Quailes argued that his mental health issues had been service-related or at least service-aggravated. *Id*. at 109. On September 26, 1991, the BCNR denied reconsideration. It found that "the evidence submitted was insufficient to establish the existence of probable material error or injustice" and advised that it "concurred with the comments contained in the advisory opinions." *Id*. at 94. It informed Mr. Quailes that "the additional evidence which you submitted in support of your request [was] insufficient to establish that your discharge was improper or that you were unfit for further service by reason of a physical disability which was incurred in or aggravated by your period of naval service." *Id*.

### D. Suit in United States Claims Court

In 1992, Plaintiff, appearing *pro se,* filed suit in this court, requesting "disability payments and other benefits, including correction of his military records to show that he suffered and continues to suffer from Post Traumatic Stress Disorder ('PTSD'), and should have been retired at a 100-percent medical disability rating." *Quailes,* 25 Cl. Ct. at 660. The issue before the court was "whether plaintiff was properly separated from the military for misconduct instead of disability." *Id*. at 660-61. The court determined that the Navy had acted within its prerogative to discharge Mr. Quailes for disciplinary reasons without any concurrent obligation to proceed with disability evaluation processing. *Id*. at 665-66. The pertinent Navy regulation "clearly indicates that it is within the discretion of the Chief Naval Officer whether to proceed with a disability rating or separate the member solely on misconduct, without a disability rating, as long as a final determination as to disability retirement has not been made." *Id*. at 666. The Navy's decision to terminate Mr. Quailes for civil misconduct and the medical board's conclusion that his mental health issues had pre-existed his service in the Navy were such that "Mr. Quailes failed to show by cogent and clearly convincing evidence a material legal error or injustice in the correction board proceeding." *Id*. "This court does not have the authority to substitute its judgment for that of the Navy in determining who should be separated for misconduct and who should be separated for disability." *Id*. The trial court's grant of summary judgment dismissing Mr. Quailes's complaint

was affirmed by the Federal Circuit.  *Quailes v. United States*, 979 F.2d 216 (Fed. Cir. 1992).

On May 17, 2012, Mr. Quailes again sought reconsideration of the BCNR's 1989 determination.  *Id*. at 60-65.  On June 12, 2012, the BCNR again turned him down, on the ground that he had submitted no new material evidence.  *Id*. at 58.

II.    Standard of Review

It is well-established that subject-matter jurisdiction is "a threshold question that must be resolved . . . before proceeding to the merits" of a claim.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998).  When jurisdiction is challenged, the inquiry thus goes not to whether a plaintiff will ultimately prevail, but whether this court has jurisdiction to hear the matter in the first instance.  *See Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In weighing a motion to dismiss for lack of subject-matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor."  *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Nevertheless, when this court's jurisdiction is challenged, it is the plaintiff's burden to demonstrate jurisdiction by a preponderance of the evidence.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

When a party is acting *pro se*, courts generally accord the party greater leeway than if he or she had professional representation.  *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"); *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002).

"While a court should be receptive to pro se plaintiffs and assist them," it must not, however, cross the line between finder of fact and advocate.  *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002).  Moreover, "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements."  *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

Even where subject matter jurisdiction over a claim has been established, the claim may be subject to dismissal for "failure to state a claim upon which relief may be granted," pursuant to RCFC 12(b)(6).  The allegations of the complaint are construed favorably to the pleader, *Scheuer*, 416 U.S. at 236, but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

III.     Discussion

Unfortunately for Mr. Quailes, the two claims that he presses – wrongful discharge and disability benefits – are well beyond the period allowed under the statute of limitations that governs the filing of actions in this court.   His claims thus fail for lack of jurisdiction.

The subject matter jurisdiction of the United States Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491, which provides, in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act itself, however, "does not create substantive rights.   Rather, it is a jurisdictional provision 'that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).'"   *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

The Federal Circuit has explained that the substantive right must stem from another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States."   *Loveladies Harbour, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994).   The "other source of law," however, "need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'"   *Holmes*, 657 F.3d at 1309 (quoting *Navajo Nation*, 556 U.S. at 290).

Even granting Plaintiff's pending motion to amend his complaint to assert the Military Pay Act, 37 U.S.C. § 204, as a money-mandating source of subject matter jurisdiction for his wrongful discharge claim (which would otherwise suffice, *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc); *Schmidt v. United States*, 89 Fed. Cl. 111, 119 n.9 (2009)), that claim, as Defendant argues, is nonetheless out of time.

That is because the jurisdiction of this court, as an exception to sovereign immunity, is also strictly circumscribed by the limits on the period in which suit can be brought after a claim accrues. The limitations period applicable to the Court of Federal Claims, prescribed in 28 U.S.C. § 2501, establishes a limit of six years: "Every Claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."   Furthermore, the limit is jurisdictional and cannot be equitably tolled or waived. *John R. Sand & Gravel, Co. v. United States*, 552 U.S. 130, 135-36 (2008); *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) ("Tucker's Act's statute of limitations . . . cannot be waived

or extended by equitable considerations").

Given that a cause of action for money damages for wrongful discharge accrues upon discharge, *see Martinez,* 333 F.3d at 1303, the six-year clock on Mr. Quailes's discharge claim began running on August 24, 1979, when his discharge from the Navy took effect, nearly 33 years prior to the filing date of this suit. Additionally, it is well-established that the accrual date of a military discharge claim is neither delayed nor reset if the service member pursues the optional remedy of relief from a military corrections board, as Mr. Quailes attempted in the period from 1987 to 1989. *Stanley v. United States,* 107 Fed. Cl. 94, 98 (2012).

Mr. Quailes's disability claim fails for similar reasons, no matter which of three possible dates might serve as the starting point for the accrual of his claim. Although his disability benefits claim also does not identify a money-mandating statute, it is evident that his claim would arise under 10 U.S.C. § 1201, which governs disability retirement cases. *See Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005). Nevertheless, as the Federal Circuit explained,

> the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance. Therefore, if at the time of discharge, the service member requested review by an appropriate board and the request was denied, or if the board heard the service member's claim and denied it, then the limitations period begins to run upon discharge. But where the claimant "has not had or sought a Retiring Board,[1] his claims does not accrue until final action by the Correction Board" . . .

*Id*. at 1225 (quoting *Friedman v. United States*, 310 F.2d 381, 396 (Ct. Cl. 1962)) (internal citation omitted).

The court in *Chambers* further observed, however, that if the service member had been released without a PEB hearing and subsequently files a claim for disability benefits before a Correction Board, his claim would not have ripened until a decision of the Correction Board. *Id*.

In his complaint, Mr. Quailes alleges that, on June 22, 1979, he had requested that the findings of the medical board "be forwarded to the Office of Naval Disability Evaluation (CPEB)," but that instead he was discharged for misconduct. Compl. ¶ 14. The record does not reflect any formal request as such but, rather, merely that he acknowledged the findings of the medical board, which included a recommendation of CPEB consideration. Def.'s App. at 34. As Defendant notes, if the Court were to conclude that Mr. Quailes had indeed requested disability review at that time and been denied consideration, the accrual date of his claim would have begun in 1979. Any

---

[1] The court in *Chambers* noted that a "Retiring Board" is now called a Physical Examination Board, or PEB, which "determines a service member's fitness for duty and entitlement to disability retirement once a Medical Examination Board or MEB finds the soldier does not meet the Army's standards for retention under its regulations." *Chambers*, 417 F.3d at 1225 n.2.

subsequent claim in this Court later than six years after his discharge, that is, any time later than June 24, 1985, would have been out of time.

He formally applied to the BCNR for disability benefits, however, in April 1987 and was denied on January 30, 1989. His claim therefore can be considered to have accrued on that date, which still leaves his instant complaint significantly out of time.

In 1989, Mr. Quailes requested reconsideration of the BCNR's denial of his claim for disability retirement benefits. Reconsideration was denied in September 1991. Although a request for reconsideration does not re-start the accrual date of his claim (unless there is a showing of new evidence or changed circumstances), *see, e.g., Schmidt*, 89 Fed. Cl. at 121-22, even an accrual date of September 1991 would leave his 2012 complaint well beyond the six-year limitations period. Furthermore, such a request for reconsideration based on new evidence must have been made within a reasonable period of time. *Smalls v. United States*, 298 Fed. Appx. 994, 996 (Fed. Cir. 2008). As little as a two-year delay in petitioning for Board reconsideration has been held to have clearly exceeded "the short or reasonable period which serves to deprive an administrative decision of finality for statute of limitations purposes." *Van Allen v. United States*, 236 Fed. Appx. 612, 614 (Fed. Cir. 2007). Accordingly, even to the extent that the BCNR's 1991 denial of reconsideration may be construed as the accrual date of Mr. Quailes's disability claim, he is nevertheless still out of time.

In light of the requirement that a request for reconsideration does not re-start the accrual date unless made within a reasonable time, Mr. Quailes's 2012 renewed request for reconsideration to the BCNR – made more than twenty years later – therefore also fails.

Mr. Quailes argues that Rules 60 and 61 of the Rules of the Court of Federal Claims ("RCFC"), however, provide an exception to the six-year limitations period. RCFC 61 relates to "harmless error" and merely provides allowance to a court to disregard "errors and defects that do not affect any party's substantial rights." It has no bearing on the statute of limitations issue here.

RCFC 60 relates to "Relief from a Judgment or Order." Mr. Quailes cites RCFC 60(b)(1) and (3) and 60(d) as the particular provisions relevant to his claims that eliminate "time restraints" that otherwise would bar his suit. RCFC 60(b)(1) authorizes the court to relieve a party from a final judgment for reasons of "mistake, inadvertence, surprise, or excusable neglect." RCFC 60(b)(3) authorizes such relief for reasons of fraud, misrepresentation, or misconduct by the opposing party. RCFC 60(d) is a catch-all and clarifies that Rule 60 in general does not limit a court's power to entertain an independent action for relief from a judgment or to set aside a judgment for fraud on the court.

None of these provisions avails Mr. Quailes here. The only "judgment" rendered is the 1992 decision of the Claims Court[2] in Mr. Quailes's earlier suit. As Defendant notes, however, the 1992 decision was affirmed by the Federal Circuit. It would not be appropriate for this court

---

[2] In 1992, the Federal Courts Administration Act renamed the Claims Court as the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub. L. No. 102-572, Title IX, § 902, 106 Stat. 4506 (1992).

-8-

to entertain a motion for relief from the judgment affirmed and finalized at that time. *See Constant v. United States*, 929 F.2d 654, 657 (Fed. Cir. 1991).

Indeed, the only basis on which Mr. Quailes might conceivably elude the jurisdictional strictures of the six-year limitations period is reflected in his arguments against dismissal that assert (or at least suggest) variously that facts were "concealed," that he was under the "disability of schizophrenia" in representing himself in the earlier court action, and that he was unaware until much later of certain allegedly incorrect assertions about the onset of his psychiatric problems in the 1979 sanity board report. On this basis, Mr. Quailes argues that the statute of limitations can be "tolled only so long as the plaintiff is unaware of the wrong committed," citing *Welcker v. United States*, 752 F.2d 1577, 1580 (1985). The "wrongs" of which Mr. Quailes complains are the assertion that his psychiatric problems had preceded his entry into the Army in the first place, Pl.'s Opp'n at 4, and that he was discharged from the Navy for misconduct rather than for disability.

As this Court noted in *Stanley v. United States*, 107 Fed. Cl. 94, 98 (2012), paragraph three of § 2501 provides that "[a] petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." It is a "high hurdle" to toll the statute of limitations on the claim of a legal disability. *Ware v. United States*, 57 Fed. Cl. 782, 788 (2003). The legal disability must be such that it impairs the claimant's access to the courts. *Goewey v. United States*, 612 F.2d 539, 544 (Ct. Cl. 1979). A plaintiff claiming a mental illness must show that his condition "render[ed] the sufferer incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities." *Id.*

Yet there is no indication that Mr. Quailes suffered any such "legal disability," certainly not one that impaired his access to the courts regarding either his claim for wrongful discharge or for disability benefits. He was represented by counsel at the time of his discharge from the Navy in 1979; there was no impediment to his petition to the BCNR in 1989 or to his requests for reconsideration thereafter; nor was there any barrier (other than the practical disadvantage of lack of counsel) to his suit in this court in 1992.

Rather, the Court construes Mr. Quailes's opposition to the Government's motion for dismissal more accurately an attempt to invoke what is known as the accrual suspension rule. Tolling the running of the limitations clock is distinct from suspending the accrual of the claim in the first place. Tolling suspends the clock during the pendency of the claim, that is, once the claim has accrued. "A cause of action first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011). Under the accrual suspension rule, on the other hand, the clock doesn't even begin to tick "until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319.

The Federal Circuit has cautioned that the accrual suspension rule is strictly and narrowly applied. *Id.* For the accrual suspension rule to apply, the plaintiff "must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it

must show that its injury was 'inherently unknowable' at the accrual date." *Id*. (quoting *Welcker*, 752 F.2d at 1581; *see also Holmes*, 657 F.3d at 1317.[3]

Despite Mr. Quailes's assertion that "relevant facts were concealed," it is clear that Mr. Quailes was indeed not only aware of the 1979 sanity board report but also of the CPEB and NMPC advisory reports to the Navy's Corrections Board in 1989. His requests for reconsideration to the BCNR specifically took issue with the Navy's representations about the onset of his mental health issues as well as his discharge on the grounds of civil misconduct. Def.'s App. at 108-110. In addition, the 1992 decision in this court adverted to the 1979 sanity board report as well as to the CPEB and NMPC reports. Thus, there is no basis for any claim of concealment of facts or other action on the part of the Government that would have precluded Mr. Quailes from knowing that he had a possible claim to pursue.

With no basis for tolling or otherwise suspending the running of the statute of limitations, Mr. Quailes's claims in this 2012 complaint are clearly outside the six-year limit and thus beyond the jurisdiction of the Court.

IV.    Conclusion

Because Plaintiff's claims have been asserted more than six years after the accrual of his causes of action, this Court lacks jurisdiction pursuant to 28 U.S.C. § 2501.[4]

As the United States Supreme Court noted in 1868, "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868).

Defendant's motion to dismiss is therefore granted and the Clerk is directed to enter judgment accordingly.

EDWARD J. DAMICH
Judge

---

[3] In *Holmes*, the Federal Circuit also explained that the "concealed or inherently unknowable" test is used interchangeably with the "knew or should have known" test and includes "an intrinsic reasonableness component." *Holmes*, 657 F.3d at 1320.

[4] Because the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims, it finds it unnecessary to address Defendant's alternative arguments for dismissal, pursuant to RCFC 12(b)(6), on the basis of *res judicata*.